[PHILADELPHIA, FEBRUARY 15th, 1837.]

## The COMMONWEALTH *against* The COMMISSIONERS of the COUNTY of PHILADELPHIA.

### MANDAMUS.

1. A mandamus will not be granted to county commissioners to draw orders on the county treasurer, unless there is money in the county treasury specifically applicable to such orders.
2. After the expiration of a year from the return of the viewers, appointed to assess the damages occasioned by the opening of a street in the city or part of the county of Philadelphia, if such damages shall not be paid, all the proceedings in relation to such street, become void; although the non-payment of the damages arises from the want of funds in the county treasury.

On the 26th of January 1837, a rule was granted on the Commissioners of the county of Philadelphia, requiring them to show cause why a *mandamus* should not issue, commanding them to draw warrants on the county treasurer for damages due to Thomas Hewitt and Norris Stanley, on the opening of Leonard street or M'Ginnis Court, and Carbon street; which rule was founded on the following affidavits.

" Henry M. Phillips being duly sworn, doth say, that on the twentieth day of January 1837, he presented to the Commissioners of the county of Philadelphia, (all three being present,) an order drawn by the Clerk of the Court of Quarter Sessions for the county of Philadelphia, and certified under the seal of said court; whereby the said court ordered that the Treasurer of the county of Philadelphia pay to Thomas Hewitt or to Henry M. Phillips, Esq. his attorney, the sum of five hundred dollars, (being the sum awarded for his damages on the opening of Carbon street in the city of Philadelphia,) out of the county stock, and demanded from the said commissioners their warrant upon the treasurer for the said sum, which was refused; the commissioners asserting, they could not draw any warrant for sums not ordered by the county board to be paid. This affiant further saith, that he presented the same order to Geo. W. South, Esq. County Treasurer, and demanded from him payment. The treasurer replied that he could not pay it, though there was more than that amount in the treasury for county purposes. This affiant further declares, that as he has been informed and verily believes, there was, at the time he made the above demands, and still is, in

(Commonwealth *v.* Commissioners of Philadelphia County.)

the county treasury a sum of money, not otherwise appropriated by law, more than sufficient to pay the amount of the above-described order. And this affiant further saith, that on the 7th of April 1835, he presented the said order to the county commissioners and treasurer for payment; which was refused, there being (as they alleged) no funds in the treasury sufficient for that purpose; and further this affirmant saith not."

(Copy of the order above described.)

" In the Court of Quarter Sessions for the County of Philadelphia.

The viewers appointed by this court to view and inquire what damages the owners of property will sustain by reason of the opening of Carbon street from South to Spruce streets, made report to the said court on the 3rd day of December 1834, that Thomas Hewitt has sustained damage to the amount of five hundred dollars; which said report was by the said court on the sixth day of April, A. D. 1835, confirmed absolutely.

And it is ordered by the said court, that the Treasurer of the County of Philadelphia pay to the said Thomas Hewitt or to Henry M. Phillips, Esq. his attorney, the aforesaid sum of five hundred dollars out of the county stock."

---

" On this twentieth day of January in the year one thousand eight hundred and thirty-seven, before the subscriber, an alderman in and for said city, personally appeared Norris Stanley, who on his solemn oath did depose and say, that on the 20th of January 1837, he presented to the Commissioners of the county of Philadelphia an order of the Court of Quarter Sessions of the said county, signed by the clerk and certified under the seal of the said court, directing the treasurer of the county of Philadelphia to pay to him, the said Norris Stanley, the sum of eighteen hundred dollars, and demanded payment thereof; that he received for reply from one of the county commissioners, (on behalf of the said board) that the order could not be paid, and the commissioners could not draw any warrant upon the county treasurer, as they had not the legal right so to do. That this deponent then on the same day presented the same order to George W. South, Esq. County Treasurer, and demanded payment; that the treasurer replied, it could not be paid, although there was plenty of money in the treasury. And further this deponent saith not."

(Copy of the order above referred to.)

" In the Court of Quarter Sessions for the county of Philadelphia.

The viewers appointed by this court to view and inquire what damages the owners of property will sustain by reason of the opening of M'Ginnis Court or Leonard street from South to Shippen streets, made report to the said court on the 30th day of October

(Commonwealth *v.* Commissioners of Philadelphia County.)

1835, that Norris Stanley has sustained damage to the amount of eighteen hundred dollars; which said report was by the said court on the twelfth day of July 1836, confirmed absolutely.

And it is ordered by the said court, that the treasurer of the county of Philadelphia pay to the said Norris Stanley the aforesaid sum of eighteen hundred dollars out of the county stock."

To this rule the Commissioners made the following return:

" The undersigned commissioners of the County of Philadelphia having been served with rules in the above cases to show cause why a *mandamus* should not issue to them, to draw warrants on the county treasury for the amount of damages respectively due to the relators, make the following return to the same.

1st. That there is not in the county treasury at this time, nor was there at the time of the application of the relators to them, any funds applicable to the payment of such orders; the whole balance then in the treasury being demanded for current expenses, and otherwise specifically appropriated. The amount actually in the treasury was $56,032 76; the amount due, but not collected from the tax fund of 1836, was $29,700 96; in all $85,733 72. The arrears of taxes of 1836, will not be paid in all probability till the 1st of April 1837. The county are now liable for requisitions under various acts of assembly, exceeding the amount actually in the treasury, and will before the 1st of April, 1837, be liable to requisitions, amounting in all to $101,963 65, leaving a deficit of $16,229 93. On inquiry of the county treasurer, they are satisfied that this statement is correct, and that there can be no change till the county board shall be convened, and authorise the rate per centum of county tax for the current year. By the act of assembly constituting the county board, the commissioners are prohibited from convoking the board during the sessions of the legislature, and must give ten days previous notice of the time of meeting. It may be assumed therefore, that no means of relief can even be authorised before the 10th or 15th of April, 1837, and that no part of the fund so authorised can be realised and made available, till the 1st of September, 1837. The whole amount of requisitions above stated, $101,963 65, will be called for before the 1st of April, 1837. The estimated deficit on the 1st of September next, is $41,229 93. The commissioners, therefore, have no hesitation in making returns to the rules of your honourable court, that there is no money in the treasury applicable to the payment of damages due to the relators, nor will there be, until the county board shall take such measures for the relief of the county, as to them may seem expedient.

2d. The commissioners further return, that by the act of 10th of April, 1834, constituting the county board, the power of authorising loans on the credit of the county, is vested exclusively in that body; and by the 38th section of the act of 16th June, 1836, the county board is authorised, when they deem it expedient, in all cases of

(Commonwealth v. Commissioners of Philadelphia County.)

loans authorised by them, to appropriate the proceeds thereof, and certify the same; and in no case shall any part of the proceeds of said loans be paid out of the county treasury, except under such appropriations. That in pursuance of said authority, the county board, at a meeting held on the 15th of July, 1836, (the proceedings of which are made part of this return,) authorised a loan of $440,250, and especially appropriated the proceeds thereof. By reference to these proceedings, it will be seen that $409,195 was to be borrowed forthwith, to be appropriated in the manner therein specified; and holders of orders for damages in certain enumerated cases, (not however comprising those of the relators,) were authorised to take certificates of said loan, bearing five per cent. interest, in satisfaction of the said orders. That besides this loan of $409,195, to be forthwith raised, a further loan of $31,055 was authorised, conditioned on the state of facts hereafter to be set forth. The proceeds of this loan were also specifically appropriated, with power of subscription; and among the appropriations thus made of the said conditional loan, was $6,625, to pay damages on M'Ginnis' court or Leonard street, comprising the claim of Norris Stanley, one of the relators, and $4,850 on Carbon st. comprising the case of Hewett the other relator. The contingency on which this loan was to be authorised, was the following.

By the acts of 3d April, 1804, (4 *Smith*, 198,) and 25th of March, 1805, (4 *Smith*, 232,) regulating the opening of streets, &c. in the City and County of Philadelphia, after providing for the assessment of damages, it is enacted that unless the same shall be paid within one year next after the return made by the viewers, all such proceedings as aforesaid shall be void and of no effect. More than a year having elapsed from the time of the return of the viewers of damages, in the cases to be settled by the loan of $31,055, without the payment of the damages, in consequence of the want of funds in the county treasury; the County Board deemed it expedient to make the borrowing of that amount conditional on the decisions of your honourable court, either on a case stated, or application for a *mandamus* on the question arising out of the provisions of the act of assembly first referred to, in the cases in which rules have been taken on your respondents. It appears by the affidavits that in the case of *Carbon street*, the report of the viewers in favour of Thomas Hewitt, was made to the Court of Quarter Sessions on the 3d December, 1834, and the certificate of the board was issued on the 15th of July, 1836; more than a year expiring after the return of the viewers without payment of the damages; thus presenting the case contemplated by the board. If on the case thus presented, the court should be of opinion that the lapse of one year under these circumstances has not avoided the proceedings, the relators would be compensated out of the loan which the commissioners would be authorised to raise; if it has, the relator is entitled to no damages from the county.

In the case of Leonard street, it appears that owing to some mis-apprehension unknown to your respondents, the amount to pay damages on Leonard street, was comprised in the loan of $31,055, although a year had not elapsed after the return of the viewers, the return being on the 30th of October, 1835. Still the case being specifically provided for by the certificate, and your respondents having no authority to borrow money, or to appropriate it when borrowed, except according to the certificate, there is no relief in their power.

The commissioners in showing cause why the *mandamus* in these cases should not issue, have made this detailed return in order to show the court,

1. That there is no money in the treasury which is not wanted to defray the current expenses of the county, and that there is not sufficient even to defray them.

2. That if there were, the claims of the relators are both specifically provided for in the certificate and schedule of the county board, issued and dated the 15th of July, 1836, and could not be paid out of the ordinary receipts of the treasury.

All of which is respectfully submitted.

> J. ENGELMAN,
> C. F. HOECKLEY,
> County Commissioners."

The certificate of the County Board, referred to in the foregoing return, was as follows :—

" In pursuance of the authority conferred by law, the county board issue the following certificate.

An additional funded debt of four hundred and forty thousand, two hundred and fifty dollars is hereby authorised on the credit of the county, to bear an interest of five per cent. per annum, and no more; payable half-yearly; the principal payable the 1st of January, 1860, or sooner, with the consent of the holder.

The county commissioners are authorised, on the terms, and under the restrictions hereinafter provided, to issue proposals forthwith, for a loan of four hundred and nine thousand, one hundred and ninety-five dollars, part of said loan of four hundred and forty thousand, two hundred and fifty dollars.

The said amount, when realised, to be appropriated as follows :

1st. To the payment of outstanding warrants, as per schedule, one hundred and thirteen thousand, six hundred and forty-three dollars and ninety-six cents,                                                  $113,643 96

(Commonwealth *v.* Commissioners of Philadelphia County.)

2nd. To the payment of road-damages, as per schedule B., one hundred and eighty-nine thousand four hundred and twenty-nine dollars, and thirty-three cents,     189,429 33

3rd. To Eastern Penitentiary, four thousand dollars,     4,000 00

4th. To Moyamensing Prison, thirty thousand dollars,     30,000 00

5th. To Vagrant's Apartment, thirty thousand dollars,     30,000 00

6th. To rebuilding bridge near Bridesburg, ten thousand and sixty-six dollars and seventy-one cents,     10,066 71

7th. To meet deficiency in receipts for 1836, twenty-six thousand dollars,     26,000 00

8th. To Mayor's Court, Northern Liberties, five thousand dollars,     5,000 00

9th. To pay damages on Lybrand street, in case the Supreme Court shall decide to grant a mandamus on the county commissioners to draw their warrant therefor, or on a case stated to that effect shall determine that the same shall be paid : more than a year having elapsed after the final confirmation of the report, without the payment of damages ; and in case the Supreme Court shall decide that the same shall not be paid, the proceedings having become null and void, then into the treasury for county purposes,     1,055 00

    $409,195 00

The said commissioners are hereby further authorised, in case only the Supreme Court shall, on said application for a *mandamus* on case stated, decide that the above-mentioned amount of one thousand and fifty-five dollars shall be paid as damages, to issue proposals for an additional loan of thirty-one thousand and fifty-five dollars, at five per cent., reimbursable as aforesaid, being the balance of the larger loan of four hundred and forty thousand, and two hundred and fifty dollars, to be appropriated to pay the amount of all awards of damages for streets and roads named in schedule C., confirmed prior to the date of this certificate, and remaining unpaid. The said sum of thirty-one thousand and fifty-five dollars not to be borrowed, unless the decision of the Supreme Court be as aforesaid.

The terms and measures of advertising for and taking the said loan of four hundred and forty thousand two hundred and fifty dollars, or any part thereof, shall in all respects be the same as was

provided for in the act of the 10th of April, 1834, except that the certificates shall be for the shares of fifty dollars; and the county commissioners shall append to their advertisement for proposals, a copy of the 40th section of the act of the 16th of June, 1836, entitled an act regulating election districts, &c.; and that the said proposals shall be opened in the presence of the county commissioners, the county treasurer, and at least two of the commissioners of the sinking fund, a majority of whom shall decide which are the best proposals for the said loan; and further, that any person interested in appropriations, No. 1 and No. 2 aforesaid, may at any time after the 25th of July, 1836, and before the negociation of the said loan of four hundred and nine thousand one hundred and ninety-five dollars, on presenting and delivering up his warrant on the treasurer, be allowed to receive a certificate of county stock for the amount of his said warrant, with which he shall credit the county as cash, but no certificate shall issue for a fraction of fifty dollars. The same right to take stock in the provisional loan of thirty-one thousand and fifty-five dollars, to be extended to damages for streets and roads, confirmed prior to the date of this certificate, when such decision of the Supreme Court shall be had.

The two said loans of four hundred and nine thousand, and one hundred and ninety-five dollars, and thirty-one thousand and fifty-five dollars, making altogether four hundred and forty thousand, and two hundred and fifty dollars, to be considered as loans authorised prior to the 1st of August, 1836, and within the scope and effect of the 40th section of the act of the 16th of June, 1836, creating a county sinking fund.

Witness our hands at Philadelphia, this 15th day of July, A. D. 1836."

## Second Report.

" In pursuance of authority conferred by law, the county board issue this supplementary certificate, hereby authorising the commissioners of the County of Philadelphia, to advertise and receive proposals for a loan, on the credit of the county, of two hundred and five thousand dollars, being part of the larger loan of four hundred and nine thousand, one hundred and ninety-five dollars, authorised on the 15th of June last, and to negociate the same on the most advantageous terms that can be had therefor. The notice, terms and conditions of said loan of two hundred and five thousand dollars, except so far as relates to the rate at which the same may be negociated, to be in all respects the same as in the case of the said larger loan of four hundred and nine thousand one hundred and ninety-five dollars. The said loan of two hundred and five thousand dollars, when negociated, to be appropriated for the purposes specified in schedule E, and for no other purposes whatever. Pro-

vided that nothing in this supplemental certificate shall be taken to affect the right of any of the creditors of the county, mentioned in the former certificate and schedules thereto appended, to take certificates of said larger loan, in liquidation of their respective claims. In witness whereof we have hereunto set our hands and seals, this 5th day of October, A. D. 1836."

Mr. *W. B. Reed*, for the respondents, cited *Clyde* v. *Commissioners*, (1 *Wharton*, 1,) and *Commonwealth.* v. *Comm. of Lancaster*, (6 *Binn.* 8,) to show that a *mandamus* would not be granted in the face of a return by the commissioners that there were not adequate funds in the treasury; and that such a return is conclusive.

2. That the lapse of a year from the return of the assessment of damages, avoided all anterior proceedings, when the failure to pay resulted from want of funds in the county treasury. He cited *section 3, act of 25th of March,* 1808. 4 *Smith*, 232 ; and *act of 3rd of April,* 1804. *Id.* 199, *section 3.*

3. That the commissioners had no authority to borrow money to pay these orders, which were specifically provided for in the certificate of the board ; he cited 38th *section of act of 16th of June,* 1836. *Pamphlet Laws*, 1835-6, p. 712.

Mr. *H. M. Phillips, contra.*

The opinion of the Court was delivered by

SERGEANT, J.—The return by the defendants on oath, that there is not at this time in the county treasury, nor was there at the time of the application of these relators, any funds applicable to such orders, the whole balance then in the treasury being demanded for current expenses and otherwise specifically appropriated, is a sufficient answer to the request for a present mandamus to the defendants to pay the amount of these claims. This principle was decided very recently in the case of *Comm'lth ex rel. Price* v. *The County Commissioners*, (1 *Whart.* 1) ; and the reasons of it are obvious. The county commissioners are the officers elected by the people, under the laws, to superintend the finances of the county. They authorise all its expenditures, and are responsible for the faithful and prudent management of the concerns of the county in that respect. If the funds under their control, raised by directions of the county board in whom the authority is vested by law, are not sufficient to meet the claims against the treasury, how are they to pay them ? Or why should they draw orders for them ? It was decided long since in *Comm'lth ex rel. Witmer* v. *The Commissioners of Lancaster County*, that they ought not to draw orders on an empty treasury ; and where the demands exceed the funds, it is an empty treasury as to some of them. Under these circumstances

the county commissioners must exercise a sound and just discretion in reserving money to defray the current expenses of the county; because they are of the first importance to the welfare of the public; and they are precluded by law from expending moneys specifically appropriated, otherwise than for their specified objects. This court would not interfere with the exercise of a discretion so plainly proper and necessary.

But the main point in the present case arises under the loan authorised by the county board, of a certain sum, for the purpose of defraying among other claims, those occasioned by the damages awarded for the opening of Carbon street and Leonard street. This loan was to be raised only in case this court should be of opinion, that under the circumstances, claims such as those of the plaintiffs were valid. The objection is, that the acts of the 3rd of April 1804 and the 25th of March 1805, after prescribing proceedings to be adopted for the laying out and opening streets in the city and part of the county of Philadelphia, provide that "unless the damages shall be paid within one year next after the return made by the viewers, all such proceedings shall be void and of no effect whatsoever;" and that more than a year has elapsed from the time of the return of the viewers of damages, in cases to be settled by the loan above mentioned, without the payment of the damages, in consequence of the want of funds in the county treasury.

Where a year has elapsed from the return of the viewers, without payment of the damages by them assessed, it is too clear to admit of a doubt, that the county commissioners are not bound to pay the damages. These damages are the consideration money for the property of an individual taken as a street for the public use: but if the public cannot thereby acquire a title to the street, the money is not to be paid. That they cannot, is evident: for the act declares that all the proceedings for that purpose shall be void and of no effect. If so, they give no right to open or use it as a street; but the property remains vested in the individual as it was before, free from all liability to be opened as a public highway, without new proceedings.

The public have no other mode of acquiring the right to the land, (without the express or implied consent of the owner,) but by certain prescribed proceedings; and if those proceedings are annulled and declared to be of no effect, the right of the public never vests. The public would then pay their money without any equivalent. If the property is not transferred to the public, but the individual retains it as before, he cannot compel payment for it. The owner is no wise injured by this result. His property is untouched; for unless the damages are previously paid, the street cannot be opened. The only consequence is, that things remain exactly as they were; and there is no street. Nor ought there to be a street where the funds of the public (whom the county commissioners in this respect represent,) are in such a condition as not to admit of paying within the

(Commonwealth v. Commissioners of Philadelphia County.)

year, without greater public detriment and inconvenience than dis-
pensing with the street. Indeed it would seem at present that some
streets had better be dispensed with than that the expenditure of
money from the county treasury should be continued on a scale,
which has, within a very few years, involved the county in debts
and responsibilities to near a million of dollars; and which appear
by the return in these cases, to be more likely to increase than to
diminish, unless great care be taken.

Motion denied.