# Gress' Appeal.

Reasonable diligence on the part of a ward to call his or her guardian to account, will be required: and if the husband of a female ward delays to ask for a citation for nearly nineteen years after an alleged settlement between him and the guardian, and for fifteen years after the ward came of age, and until after the death of the guardian, the settlement of an account will not be decreed, merely on the suggestion that no account has been filed, no sufficient reason having been assigned for the delay; ignorance alone on the part of the husband being assigned, and that probably resulting from his own supineness; there being nothing in the case showing that the guardian placed difficulties in the way of the investigation, or practised artifice to mislead inquiry.

APPEAL from the decree of the Orphans' Court of *Northampton county*.

On the 21st day of August, 1846, the petition of Jacob Gress,

[Gress' Appeal.]

of Covington township, Luzerne county, verified by affidavit, was presented, setting forth, that on the 1st day of Dec. 1820, the said Orphans' Court, on the petition of Christian Miller, had appointed Henry Fenner guardian of the person and estate of Susan Umfert, a minor, under the age of fourteen years; that, as such guardian, the said Henry Fenner had received, as the property of his ward, two certain notes, one of them given by John Brotzman and Jacob Shoemaker; and the other given by John Metzgar and John Miller—both payable to Christian Miller, and by him assigned to the said Henry Fenner, for the use of his said ward, and amounting at the time she became of age, to the sum of $500, or thereabouts. That neither the said Henry Fenner in his lifetime, nor his administrator since his decease, have ever settled an account of said guardianship. That on the 19th March, 1826, the said petitioner was intermarried with said ward, and praying a citation to the administrator of said Henry Fenner, now deceased, to render an account of said guardianship.

Citation awarded by the court, which was duly served and returned.

20th Nov. 1846, Joseph Fenner, administrator of Henry Fenner, deceased, files an answer, verified by affidavit, admitting the appointment of said Henry Fenner as guardian, as stated in the petition, but alleging that the said appointment, by its terms, expired when said minor should attain the age of fourteen years, and that said minor attained said age about the year 1823 or 1824; that respondent had no personal knowledge that said Henry Fenner ever received any funds or estate belonging to said ward; but among the papers of said deceased, was found a bill single, dated Aug. 29, 1819, of John Brotzman and John Shoemaker, to Christian Miller, for $130 with interest, informally assigned by him, 5th May, 1820, to Susan Umfert, on which sundry payments appear to have been made to the said Henry Fenner, leaving a balance still due and unpaid thereon. That respondent does not believe any funds other than the said bill single ever came to the hands of said intestate for the said ward; that by an endorsement on the certificate of guardianship, dated 19th May, 1821, subscribed by the said Christian Miller, it is stated that he had appointed said Henry Fenner guardian of the said Susan, and thereby gave over to him the aforesaid bill single, for $130, with interest from date, which sum said Henry Fenner was to give said Susan at her lawful age. That after the marriage of the said Susan with said Jacob Gress, *when the said Susan had attained the age of eighteen years, to wit, on the 9th. Oct.* 1827, a settlement took place, as respondent had been informed and believed, between the said Henry Fenner and said Jacob Gress, in which said bill single was taken into account, and the interest thereon added for eight years, one month, and ten days, which, with the principal, made an aggregate

of $193.26; and on the same day, a bill single of said Jacob Gress, with one Nicholas Metzgar, for $200, payable to said Henry Fenner, bearing date the same 9th Oct. 1827, was executed and delivered to said Henry Fenner. That from a memorandum of said Henry Fenner, respondent believes that said Henry advanced to said Gress the $6.74 over and above the principal and interest of the bill single of said Brotzman and Shoemaker; and that the said Gress, without making any allowance for the compensation of said intestate, is indebted to his estate the said sum of $6.74, with interest. That respondent is informed and believes that the said bill single of Gress and Metzgar was taken for the security of said Fenner as to the said sum of $193.26, against any claim that might be made upon him in consequence of the said Susan not having attained the age of twenty-one, and as to the residue thereof, $6.74, together with its interest, for the repayment of the same to him. That so far as respondent knows and believes, the said Henry Fenner and said Jacob Gress treated the said transaction of 9th Oct. 1827, as a full and final settlement of said guardianship. *That, said Henry Fenner died 15th Oct. 1845*, and respondent has no materials to settle or adjust an account, other than that of 9th Oct. 1827.

Jan. 21, 1848, the reply, verified by affidavit of Jacob Gress, the petitioner, was filed, in which he sets forth that the other note or bill single, received by the said Henry Fenner, for the use of his said ward, was given by John Metzgar and John Miller to Christian Miller, for about $200, dated in 1819, and assigned by said Christian Miller for the use of said ward, and delivered to said guardian. That on or about the 9th day of October, 1827, the petitioner called on H. Fenner, for the purpose of endeavoring to make some settlement with him of said guardianship. That the said Henry Fenner informed him, he could make no settlement with him, nor could he pay over the moneys in his hands until the wife of petitioner should attain the age of twenty-one; but that he would advance him the sum of $200, if petitioner would give him security for the said money, inasmuch as if the wife should die under the age of twenty-one and without children, petitioner would not be entitled to it. The petitioner thereupon procured Nicholas Metzgar as such surety, and he received the said sum of $200, and he and Metzgar signed an instrument of writing, the nature of which he does not recollect, but presumes that it was the bill single mentioned in the answer of respondent. That petitioner was, and is unable to read or write, except to write his name, and that the $200 was all the money he stood in need of at the time. That several years afterwards, and when his wife was over the age of twenty-one years, petitioner again called on said Henry Fenner, and requested a settlement, when he was informed by said Fenner, that the sum of $200, which he had already received, was about

all he was entitled to; that he inquired of said Fenner what and how much was the estate that he had received for said ward, and was told by him that it consisted of the note above mentioned, of John Brotzman and Jacob Shoemaker, with its interest, and that the $200 was about the amount, and there was no need of any further settlement. That petitioner then left him, and in May, 1846, for the first time learned that said Henry Fenner had received for his said ward the note of John Metzgar and John Miller; and soon after, applied to counsel and procured the issue of the citation in this case. He denied that there was ever any settlement or accounting, by the said Henry Fenner, with him, in respect of the said guardianship, and prayed that the said administrator may be compelled to settle an account, or in default thereof, that the court would cause an account to be settled for him, according to the act of Assembly.

December 2, 1848, the court, JONES, J., dismissed the citation, and gave the following opinion:

After the lapse of twenty years, and after the death of the guardian, we are asked by the husband of the ward to decree an account of the guardianship.

It is true, that as a general rule, lapse of time does not operate as a bar to relief in equity, when the parties stand in the relation of trustee and *cestui que trust;* but there are exceptions to the universality of that rule, founded on considerations of experience and policy. Courts will not allow this rule to be invoked for the purpose of bringing forward stale and doubtful claims, long after the original parties have passed from life, and when, in the ordinary course of human affairs, their documents and vouchers have been scattered or destroyed. Before a court of equity will open the fountains of such litigation, it will satisfy itself that it will be able to do complete justice notwithstanding the lapse of time. The inability to do that justice under the circumstances presented in a given case, is recognised as sufficient ground for refusing relief: *Story's Eq.* 3d edit. sec. 1520.

Here the petitioner, representing himself to be a poor and an ignorant man, has lain by for something over nineteen years. There was never an account settled by the guardian before the register; nor was any step taken by the petitioner to compel such a settlement. The guardian might easily have been compelled to answer upon oath all proper questions touching the trust. Neither poverty nor ignorance of the law will excuse one for not pursuing his remedies with promptitude, though poverty, so far as it accounts for laches, has been allowed to weaken the foundation of the presumption, where advantage has been taken of it by the other side. Nothing of the kind is alleged here. But it was not till after the death of the guardian that the petitioner discovered that other property than that admitted by him to have been received for his

[Gress' Appeal.]

ward, had come into his possession. It is certainly well settled in equity, that no one will be presumed to have abandoned a right so long as he remains in ignorance of it, or labors under a mistake. Mere ignorance of a fact does not *per se* import culpable negligence; and yet where one has had the means of obtaining knowledge constantly on hand, and has neglected to avail himself of it, he cannot, it would seem, set up his ignorance, and avoid the consequences of his neglect. A party who seeks relief against the representatives of one deceased, upon the ground of his ignorance of a given right, should be held to satisfy the conscience of the court in a degree far more satisfactory than could be required *inter vivos.*

When twenty years have thrown their shadows around the transaction, deepening its obscurity by the lapse of time, and when the important discovery is made only just after the death of the party whose estate is sought to be charged, it seems to us that the case should be clear as a sunbeam, to authorize the court to interfere. The maxim, "*vigilantibus non dormientibus lex est,*" prevails as well in equity as at law; and who can say that by the exercise of ordinary diligence, this petitioner could not have made the discovery he has made whilst the guardian was alive, whilst all the matters were fresh, and perhaps were susceptible of an easy explanation by the one most capable of giving it. . We can see that it would be establishing a precedent full of danger and fruitful of litigation to call upon Fenner's administrator to account on the case before us, and we therefore dismiss the citation.

14th April, 1849, Jacob Gress appealed.

It was assigned for error:
The court erred in dismissing the citation, and in refusing to order an account to be taken of the said guardianship.

The case was argued by *Reeder*, for appellant.
*Porter*, for appellee.

The opinion of the court was delivered December 14th, by
BELL, J.—For the reasons given by the President of the Orphans' Court, we think its decree dismissing the citation, is well pronounced. It will, therefore, be perceived, our conclusion is not based upon any supposed operation of the statutes of limitation; for these, as is shown by Commonwealth *v.* Moltz, 10 *Barr* 527, and the cases there cited, are inapplicable here. Nor do we proceed upon any presumption of payment springing from mere lapse of time. Less than twenty years have expired between the moment when the petitioner might have called on the guardian for payment, and the period of the initiation of this proceeding; and I have failed to perceive any peculiar circumstances proper to aid the absence

[Gress' Appeal.]

of the full period.   Neither is our refusal to aid the petitioner founded in an actual settlement between the guardian and the husband of his ward.   It results, altogether, from the unwarrantable negligence of the party to call for an account, without offering any sufficient reason accounting for the delay.   The rule which obtains in courts of equity, suggested by the hazard of exposing the trustee to injustice, was well stated by the court below; and although no particular period can be ascertained which, of itself, will be sufficient to bar relief in all cases, it is certainly true that, at least, reasonable diligence is required in every case.   This is absolutely necessary to attract the aid of the court, and it is wholly wanting here.   Were fraud alleged, or could the long delay be imputed to the duplicity or other turpitude of the guardian, a different case would be presented.   But no such allegation is indulged.   Nay, it is not even alleged the latter received or ought to have received money or other property, for which he is liable to account.   The pleadings, to which we can alone look, present a simple call by a ward upon the representatives of her late guardian to file an account, upon the bare suggestion that no account has been filed according to law, made nineteen years after the relation of confidence had ceased to subsist between them.   Now, it is the undoubted duty of these trustees regularly to exhibit official statements of their administration of the trust committed to them; a duty which, under ordinary circumstances, will be enforced by compulsory process. But where, as in the instance before us, after payment and receipt of a sum averred to be the whole fortune of the ward, the latter, or those representing him, acquiesces for a period of, at least, fifteen years, until after the death of the guardian, and, probably the destruction of the evidence he relied on for safety, it is next to impossible to reopen the transaction by ordering an account, without running the hazard of wrong and injustice.   The chance of this would seem to be sufficient to stay the hand of a tribunal governed by equitable considerations, and is certainly so, where the only reason given for the delay is the ignorance of the petitioner, resulting, as it would appear, from his own supineness or indifference. The road to knowledge was always open to him.   So far as we are given to understand, the information recently obtained might have been attained to long ago.   At all events, there is nothing to show the guardian placed obstacles in the path, or practised artifice to mislead inquiry.   The mere neglect to settle and adjust an account cannot be so esteemed.   Our books show the omission to do so is not at all unusual, and the cases of Ex parte Cress, 2 *Whart.* 294, and Lukens' Appeal, 7 *W. & Ser.* 48, prove that it is not such gross *laches* as ought to place the guardian altogether at the mercy of his late ward; especially where something like a settlement was had between them.

I repeat, we entirely concur in the reasoning of the learned

[Gress's Appeal.]

judge who ruled the case below, and it is therefore unnecessary further to elaborate.

Decree affirmed.