CITY OF LITTLE ROCK et al. v. UNITED STATES ex rel. HOWARD et al.

(Circuit Court of Appeals, Eighth Circuit. July 2, 1900.)

No. 1,421.

1. MANDAMUS—WHEN GRANTED.
    The writ of mandamus issues only to compel the discharge of a plain duty, which the parties commanded have lawful authority to do.

2. STATUTES—CONSTRUCTION.
    That which is implied is as much a part of a statute, grant, or contract as that which is expressed.

3. CITIES—RIGHTS TO ISSUE WARRANTS.
    Under Const. Ark. art. 16, § 10, providing that "the taxes of counties, towns and cities shall only be payable in lawful currency of the United States, or the orders or warrants of said counties, towns and cities respectively," and sections 1002, 1003, 5189, 5130, 5169, Sand. & H. Dig. Ark. 1894, a city of the state of Arkansas has power to issue its warrants in payment of its debts.

4. SAME—PAYMENT OF DEBTS.
    In the absence of an express limitation in the constitution or statutes of Arkansas of the power of cities to draw warrants to an authority to draw them only against a fund appropriated to pay them, or against money in the treasury, or against money that will come into the treasury within a year after their issue, municipalities of that state, under its constitution and statutes, making municipal warrants receivable in payment of city taxes, have power to issue their warrants to pay just debts when there is no money in their treasuries to pay them, and no prospect that there will be any within a year of their issue.

5. SAME—PAYMENT OF JUDGMENT.
    What public officers are empowered to do for third persons, the law requires them to do. And where a municipality and its officers have the power to pay a judgment against the city by the issue to the owner of the judgment of city warrants which are receivable for city taxes, and have no other way to pay it, it is their duty to issue the warrants, and the writ of mandamus will be granted to compel them to discharge that duty.

6. SAME—MANDAMUS—DISCRETION OF COURT.
    Where the owner of a judgment against a city has the right to compel the issue to himself of its warrants in payment thereof, the number of the

warrants that should be issued, and their respective amounts, and the time when they should be sent forth, are matters intrusted to the legal discretion of the trial court, subject always to the proviso that the right of the creditor to the warrants must not be denied or seriously impaired.

**7. SAME.**

A judgment of mandamus directing a city, which already owes $60,000, either evidenced by city warrants, or upon which such warrants are due, to issue warrants to a judgment creditor to the amount of $35,984 in payment of his judgment against it, does not constitute such an abuse of discretion as will warrant a modification or reversal of the judgment.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Eastern District of Arkansas.

The judgment challenged by this writ of error directs the city of Little Rock, its mayor, clerk, and city council, the plaintiffs in error, to issue and deliver to the relator W. B. Worthen, one of the defendants in error, upon payment by him of the legal fees of the mayor and city clerk for issuing them, warrants of that city, in specified sums, to the amount of the principal and interest of a certain judgment against that city which the relator owns, and orders the issue of a peremptory writ of mandamus commanding the plaintiffs in error to comply with these directions. This judgment directing the issue of the mandamus was rendered upon a demurrer to the answer of the city and its officers, which had been interposed to the petition of the relators for the writ. The averments of that petition were that on April 20, 1896, the relators Thomas Howard and John W. Harrison recovered a judgment for $29,256.31 and costs against the city of Little Rock; that they subsequently assigned that judgment to the relator W. B. Worthen; that no part of that judgment has ever been paid; and that Worthen has demanded of the plaintiffs in error warrants of the city of Little Rock for the amount of his judgment, and they have refused to issue them. The answer of the city and its officers was that the city had never had any power since 1871, under the constitution of the state of Arkansas, to levy taxes in excess of 5 mills on the dollar of the assessed valuation of the property in the city for any debts contracted since that year; that the debt evidenced by Worthen's judgment was contracted since 1874; that the city has annually levied a tax of 5 mills since it was contracted; that the revenue thus raised, together with all its other revenue, has always been, and still is, insufficient to pay the necessary current expenses of the city; that it has not now, and will not have in its treasury during the coming year, any money in excess of that absolutely necessary for its current expenses: that it is utterly without credit, ability, and authority to borrow money to pay its debts; that the issuance of these warrants will seriously embarrass its financial affairs; that it owes $60,000 that is not evidenced by judgments, and $75,000 in the form of judgments owned by the relator Worthen; and that he is a banker and broker, and pays a large percentage of the taxes of the city of Little Rock. The court below sustained a demurrer to this answer, and directed the issue of the writ of mandamus.

Morris M. Cohn (Walter J. Terry and John W. Blackwood, on the brief), for plaintiffs in error.

James P. Clarke, for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The writ of mandamus issues only to compel the discharge of a plain duty, which the parties commanded have lawful authority to do. Has a city of the state of Arkansas the power, and is it its duty, to issue its warrants to one of its taxpayers in payment of a judgment

which he has against it, when it has no other means of paying him, and when it has not, and will not have during the coming year, any money in its treasury in excess of that absolutely necessary to defray its current expenses, with which to pay either the judgment or the warrants? This is the question which this case presents, and the true answer to it will not be found in the decisions of courts of other states, under dissimilar laws, but in the constitution, statutes, and decisions of the state of Arkansas. The constitution of that state provides (article 16, § 10):

"The taxes of counties, towns and cities shall only be payable in lawful currency of the United States, or the orders or warrants of said counties, towns and cities respectively."

Its statutes provide:

"Sec. 1002. All county warrants and county scrip shall be receivable for any taxes for county purposes, except for interest on the public debt and for sinking fund, and for all debts due the county by whose authority the same were issued; and all warrants, scrip, acceptances or money shall be receivable for any taxes for city purposes, except for interest tax, and for all debts due the municipal corporation by whom the same were issued, without regard to the time or date of issuance of such warrant, scrip, acceptance or money, or the purpose for which they were issued.

"Sec. 1003. Whenever the county court of any county may deem it expedient to call in the outstanding warrants of said county, in order to redeem, cancel, reissue or classify the same, or for any lawful purpose whatever, it shall be the duty of said court to make an order for that purpose, fixing the time for the presentation of said warrants, which shall be at least three months from the date of such order."

"Sec. 5189. Whenever the council of any city or incorporated town in this state may deem it expedient to call in the outstanding warrants of said city or incorporated town in order to redeem, cancel, reissue or classify the same, or for any lawful purpose whatsoever, it shall be the duty of the council of said city or incorporated town to make an order for that purpose fixing the time for the presentation of said warrants, which shall be at least three months from the date of such order."

"Sec. 5130. Cities or incorporated towns, organized or to be organized under the provisions of this act, shall be, and are hereby declared to be bodies politic and corporate, under the name and style of 'The City of ———,' or 'The Incorporated Town of ———,' as the case may be; capable to sue and be sued, to contract and be contracted with, to acquire, hold and possess property, real and personal; to have a common seal, and to change and alter the same at pleasure, and to exercise such other powers and to have such other privileges as are incident to other corporations of like character or degree, not inconsistent with the provisions of this act or the general laws of the state."

"Sec. 5169. Any person owning property and having taxes to pay in any city or town may, upon application to any judge or court having authority to grant injunctions, enjoin the collection of any tax levied in such city or town, without authority of law, and may also enjoin the issue or the payment by such city or town of any warrants, certificates or other form or evidence of indebtedness against such city or town issued or contracted without authority of law." Sand. & H. Dig. Ark. 1894.

The constitution and the statutes which we have cited contain no express grant of power to cities or to counties to issue their warrants in payment of their debts. Nevertheless the existence of that power is a necessary implication from the terms of this constitution and these statutes. And that which is implied is as much a part of a statute, grant, or contract as that which is expressed. Gelpcke v. City of Dubuque, 1 Wall. 220, 221, 17 L. Ed. 530; U. S. v. Babbitt,

1 Black, 55, 17 L. Ed. 94; Citizens' Savings & Loan Ass'n v. City of Topeka, 20 Wall. 655, 660, 22 L. Ed. 455. "A thing which is within the intention of the makers of the statute is as much within the statute as if it were within the letter." U. S. v. Freeman, 3 How. 556, 565, 17 L. Ed. 724; Stowel v. Zouch, Plowd. 366. City warrants could not be received in payment of taxes, as this constitution and these statutes declare they shall be, nor would the councils of cities have been empowered to call them in and classify them, unless under this constitution and these laws cities had the power to issue them. Moreover, the grant of authority "to exercise such other powers and to have such other privileges as are incident to other corporations of like character or degree, not inconsistent with the provisions of this act or the general laws of the state," contained in section 5130, is ample to confer this power, because warrants are nothing but orders issued by the mayor and city clerk upon the city treasurer to pay money out of any funds in the treasury which are or may become available for the purpose specified, and the power to issue such warrants or orders is incidental to municipal and quasi municipal corporations whenever it is not prohibited or restricted by constitution or statute. The city of Little Rock has ample power under the constitution and statutes of that state to issue city warrants in payment of its debts.

It is insisted, however, that the judgment directing the issue of the mandamus is erroneous, because the power of the city is limited to authority to issue warrants to pay which there is, or will be during the year succeeding their issue, money in the city treasury, and the answer shows that there is not, and will not be, any such money in the treasury of the city of Little Rock. It is conceded that under the present system of administering the financial affairs of the city of Little Rock, as it is disclosed in the answer, there is not now, and there never will be, any money in the treasury of that city to pay the warrants directed to be issued to the relator, or to pay any of the other debts of that city, and that all the taxes which the city is authorized to levy, and all the revenue it can receive, are and will be needed and used to pay its current expenses. But the proposition that for this reason the city has no power to issue its warrants in payment of its just debts cannot be admitted. No authority has been cited by counsel for the plaintiffs in error which sustains this position. They have called our attention to Board v. McManus, 54 Ark. 446, 15 S. W. 897; Com. v. Lancaster Co. Com'rs, 6 Bin. 5, 10; Com. v. Philadelphia Co. Com'rs, 1 Whart. 1, 2 Whart. 286; Vincent v. Board (Colo. App.) 54 Pac. 393; In re House Roll No. 284 (Neb.) 48 N. W. 275,—and cases of like character, in which the fiscal system under consideration contemplated the payment of the obligations of the various boards and municipalities against which mandamus was sought in money, and in money only. In none of them was the payment of their debts by the receipt of the warrants which evidenced them for taxes contemplated, and in none of them were warrants receivable for taxes. When, under such a system of paying the debts of municipalities in money only, it appeared to those courts that the treasury of the particular board or municipality was, and would con-

tinue to be, empty, so that warrants, if issued, could not be paid, and when they were not receivable for taxes, so that there was no way in which they could be collected, those courts refused to issue the mandamus directing the issuance of the warrants, on the ground that the mandamus would be unavailing, and the warrants would be useless. Even under that system a contrary rule has been adopted by other courts. Babcock v. Goodrich, 47 Cal. 488, 508; State v. Clinton, 28 La. Ann. 47, 48; State v. Hoffman, 35 Ohio St. 435, 438. The mooted question which these authorities consider, however, is not presented by the case before us, and it is not necessary to debate or decide it. The reason why these authorities are neither controlling nor persuasive is that the fiscal system to which they relate contemplated the payment of the debts presented in them in money, and in money only, while the fiscal system embodied in the constitution and statutes of Arkansas expressly provides for the payment of the debts of its municipalities and quasi municipalities in two ways: First, by the appropriation of money to their payment; and, second, by the receipt of the warrants which evidence them in payment and satisfaction of the taxes of the municipalities. "It is a very remarkable thing," says the supreme court of Arkansas in Worthen v. Roots, 34 Ark. 356, 367, "that the right to use county warrants in payment of taxes should be crystallized into a constitutional provision, and indicates a strong sense in the convention of the evil and danger to the very framework of our government (which is built upon counties) of allowing the county debts to become utterly valueless in the hands of the citizens, as well as the hardship to the citizen of compelling services which would be, to all practical intents, gratuitous." These remarks apply with equal force to the warrants of cities in the state of Arkansas, for their warrants are receivable for taxes under the same provision of the constitution which treats of the warrants of counties. In the same opinion, at page 370, that court declared:

"It had always been the practice in the state to issue warrants upon funds exhausted, as if they were in the treasury, although the particular fund was required to be specified."

And at page 371, after treating of another issue, and announcing the policy of the state regarding that question, the supreme court said:

"Hand in hand with this is another policy, quite as plainly indicated in the constitution. It is that every citizen having an ascertained debt against the county, or a 'warrant,' as it is termed, shall have the privilege of paying it in for taxes. No discriminations are made in favor of any persons who, standing on the same rights, may have been more industrious or fortunate than others in obtaining these evidences of their claims. It would be, as to these creditors, the same, in effect, to refuse to allow their claims, and deny them warrants, as it would be to refuse to receive their warrants when issued; and either would be repugnant, not only to the spirit of the constitution, but to that of all our legislation for a series of years."

In Daniel v. Askew, 36 Ark. 487, 490, the supreme court of that state declared that an earlier statute which evidenced the same policy as those cited in the early part of this opinion provided two modes for the payment of county warrants:

"First, they were made payable out of any money in the county treasury not otherwise appropriated, etc., in the order of their number and date; second,

they were made receivable in payment of all taxes and debts accruing to the county, irrespective of their number and date."

In U. S. v. Miller Co., 4 Dill. 233, Fed. Cas. No. 15,776, the United States circuit court for the district of Arkansas recognized this policy of the state, and declared that the county tax of Miller county was paid each year "in the warrants of the county, leaving at the end of each year large amounts of warrants outstanding."

A careful examination of the constitution, statutes, and decisions of Arkansas discloses these facts: The constitution makes city and county taxes payable in city and county warrants, respectively. The statutes make city and county warrants receivable for city and county taxes, respectively, regardless of their number and date, and provide that the respective cities and counties may call in and classify their outstanding warrants. The decisions of the courts show that it has been the uniform practice in that state to issue warrants upon exhausted funds, and that such warrants are payable in two ways: First, they are receivable for taxes; and, second, they are payable out of any fund properly appropriated for that purpose. Now, there is no express limitation in the constitution or statutes of Arkansas of the power of cities to draw warrants to an authority to draw them only against a fund appropriated to pay them, or against money in the treasury, or against money that will come into the treasury within a year after their issue. In the absence of such a restriction, the conclusion is irresistible that the cities of that state have ample power to draw them upon an empty treasury. They are mere evidences of debt,—mere orders by one department of the government upon another,—and the plain purpose of the legislation of Arkansas was to give to the cities of that state ample power to issue their warrants in satisfaction of any just debt against them. Any other decision would abrogate the provision of the constitution and the statutes which makes warrants receivable for taxes, and would strike down the established fiscal policy of the state. If warrants could only be issued against funds that were already in the municipal treasuries, or that would be in such treasuries within a year after their issue, the constitutional and statutory provisions that they shall be receivable for taxes and that they may be called in and classified would have neither purpose nor effect. If every municipality necessarily provided the money to pay all its warrants within a year of their issue, there would be no occasion to receive them for taxes or to classify them. Taxes would be paid in currency, and warrants in cash. Under the constitution, the statutes, and the decisions of the courts of Arkansas, municipal warrants are receivable in payment of city taxes, and municipalities of that state have ample power to issue their warrants to pay just debts when there is no money in their treasuries to pay them, and no prospect that there will be any within a year of their issue. Worthen v. Roots, 34 Ark. 356, 360, 364, 367, 371; Daniel v. Askew, 36 Ark. 487, 490; U. S. v. Miller Co., 4 Dill. 233, Fed. Cas. No. 15,776; Howell v. Hogins, 37 Ark. 110, 114; Whitthorne v. Jett, 39 Ark. 139.

This, then, is the case in hand: The city of Little Rock owed the relator Worthen, on his judgment against it, $35,984. The relator

was entitled to payment of this judgment. The city was unable to pay it in money, but it had the power to pay it in its warrants. The relator was a taxpayer of that city, and annually paid a large percentage of its taxes; and he had the right, under the constitution and laws of his state, to pay these taxes with the warrants of his city. Clearly, the writ of mandamus could not be refused here on the ground upon which the authorities cited by counsel for plaintiffs in error rest,—the ground that its allowance would be futile, and the issue of the warrants unavailing,—because the relator could apply them to the payment of his taxes, and could in that way secure their collection.

But counsel for the plaintiffs in error urge another objection to this mandamus. They argue that, if the city and its officers had the power to issue the warrants, there was no provision of the statute which declared that its officers should exercise that power, and that for this reason it was error for the court below to direct them to do so. A conclusive answer to this contention is found in the opinion of the supreme court in Rock Island Co. Sup'rs v. U. S., 4 Wall. 435, 446, 18 L. Ed. 423, where that court says:

"The conclusion to be deduced from the authorities is that where power is given to public officers in the language of the act before us, or in equivalent language,—whenever the public interest or individual rights call for its exercise,—the language used, though permissive in form, is in fact peremptory. What they are empowered to do for a third person the law requires shall be done. The power is given, not for their benefit, but for his. It is placed with the depositary to meet the demands of right, and to prevent a failure of justice. It is given as a remedy to those entitled to invoke its aid, and who would otherwise be remediless."

The city of Little Rock owed the relator the amount of his judgment. It was the duty of that city to pay it. If there was any lawful way in which the plaintiffs in error could do so, it was their duty to take that way to provide for the payment of this judgment. According to their answer, there was one way, and one way only, in which they could do this, and that was by the issue of the warrants of the city, which the relator could collect by using them in payment of his taxes. He had the right to the payment of his judgment, and under the constitution and laws of the state of Arkansas he had the right to use the warrants of the city in the payment of his taxes. As this was the only way in which the plaintiffs in error could provide for the payment of this judgment, and as they had ample power to provide for it in this way, it was their plain duty to do so, and the court below properly commanded them to discharge that duty. Where a municipality and its officers have the power to pay a judgment against the city by the issue to the owner of the judgment of city warrants which are receivable for city taxes, and have no other way to pay it, it is their duty to issue the warrants, and the writ of mandamus will be granted to compel them to discharge that duty. Rock Island Co. Sup'rs v. U. S., 4 Wall. 435, 446, 18 L. Ed. 423; City of Galena v. Amy, 5 Wall. 705, 709, 18 L. Ed. 560.

The court below directed the plaintiffs in error to issue to the relator Worthen, upon payment by him of the lawful fees of the mayor and clerk, 902 warrants, of specified sums, which amounted in the ag-

gregate to $35,984, the amount due upon his judgment. Complaint is made that the court directed the issue of so many warrants, instead of one for the entire amount, and that it directed the issue of all these warrants forthwith, and it is claimed in argument that their issue will disarrange the financial affairs and disturb the administration of the government of the city. The only allegation to that effect in the answer is this:

"That to issue the warrants prayed for in relator's petition could not possibly result in any advantage to said relator, except it be at the cost and expense of the entire demoralization of the public finances, thus increasing the embarrassment and financial obligations of the city of Little Rock."

So far as this averment was interposed as a defense to the claim of the relator to the ultimate issue of the warrants, it is futile. It often increases the embarrassment of a debtor, whether public or private, to pay just obligations that have been long ignored. But the right of a creditor to the payment of his debt, and to the enforcement of that payment by all the legal remedies which the law of the land has given him, cannot be stricken down or impaired because the enforcement of that right may embarrass the debtor. City of Galena v. Amy, 5 Wall. 705, 18 L. Ed. 560; U. S. v. Jefferson Co., 5 Dill. 324, Fed. Cas. No. 15,472. So far as this averment of the answer was interposed to invoke the exercise of the discretion of the court relative to the time and manner of the issue of the warrants, it was proper for consideration. The complaints of the action of the court in this regard are inconsistent. They are that it should have directed the issue of one instead of many warrants, and that it should not have directed the issue of warrants for the entire amount of the judgment at the same time. The number of the warrants that should be issued, their respective amounts, and the time when they should be sent forth, were matters intrusted to the legal discretion of the court below. It was undoubtedly the duty of that court so to exercise that discretion that the right of the relator to the warrants should not be denied or impaired, and that no disturbance in the administration of the financial affairs of the city should be caused which was not necessary to the protection and enforcement of the right of the relator. The direction to issue numerous warrants in convenient amounts, instead of one warrant for the entire amount, was a wise and salutary exercise of the discretion of the court. It made the remedy it administered more efficient and helpful to the relator, without loss, injury, or inconvenience to the city or its officers. Nor do we discover any evidence in this record of any abuse of discretion in the direction of the court that the plaintiffs in error should issue warrants to the amount of the judgment forthwith. The answer discloses the fact that the city owes $60,000 that is not evidenced by judgment, and that is undoubtedly, partly, if not wholly, represented by warrants which the city has voluntarily issued. The holders of those warrants may pay their taxes to the city with their warrants. The relator was as much entitled to pay his taxes with the warrants due him on his judgment as were the holders of warrants already issued by the city to pay theirs with those they held. There was no way by which he could be given the benefit of this right but

by the issue of the warrants. If the city had already issued warrants to the amount of $60,000, or if it had incurred debts for that amount for which warrants were due, the issue of warrants for $35,984 more is not likely to derange its financial affairs much more seriously. Moreover, the discretion to determine this question, under the law, is not intrusted to this appellate court. The right to exercise that discretion was vested in the court below. The law imposed upon that court the duty to exercise its discretion upon this question, and to direct the issue of as many warrants as it deemed wise, at such time as it thought fit. It exercised that discretion, sitting in the presence of the parties, in the city against which this writ of mandamus runs. This court is certainly in no better position to determine the question there decided than the court below. In this state of the case, its action in directing warrants to issue forthwith for the entire amount of the judgment ought not to be reversed or modified unless the record clearly discloses a plain abuse of discretion. In our opinion, no such abuse is apparent, and the judgment below is affirmed. City of East St. Louis v. Amy, 120 U. S. 600, 604, 7 Sup. Ct. 739, 30 L. Ed. 798.

THAYER, Circuit Judge. The return to the alternative writ, all of the material allegations whereof were confessed by the demurrer, alleged, in substance, that the entire revenues of the city of Little Rock from taxes, licenses, fines, and all other sources do not amount to more than $123,000 annually; that said income is inadequate to provide for public lighting, fire and police protection, the repair of streets and bridges, the payment of the salaries of city officials, the proper maintenance of hospitals and pest houses, and other ordinary and reasonable current expenses; that the city is without ability or authority to borrow money to pay its outstanding indebtedness, in whole or in part; that the city authorities have for several years past been endeavoring to devise ways and means to settle its outstanding indebtedness and stop the accumulation of interest; that they have heretofore solicited the general assembly of the state of Arkansas to submit to the voters of the state an amendment to the state constitution authorizing cities of the first class, like the city of Little Rock, to issue negotiable bonds, and levy taxes to pay the same, for the purpose of enabling such cities to pay off all outstanding indebtedness; and that they intend to make an application to succeeding general assemblies for the purpose of securing such legislation. The return further alleged that the issuance of the warrants prayed for by the relator would demoralize the public finances, and further embarrass the city in the discharge of its financial obligations; that the total judgment indebtedness of the city was about $75,000, practically all of which was owned by the relator; that the floating debt of the city, other than its judgment indebtedness, amounted to $60,000; and that the city authorities had fixed the rate of taxation for municipal purposes for the present year at the full constitutional limit of taxation, to wit, 5 mills on the dollar of assessed valuation. In view of these allegations of the return, which must be accepted as true, I am persuaded that the trial court erred

in directing the immediate issuance of warrants to the full amount of the relator's judgment, inasmuch as they will amount to more than 25 per cent. of the entire city revenue for the present fiscal year, and will absorb that amount of the revenue, if they are used during a single year for the payment of taxes. For the reasons stated in the opinion in chief, I have no doubt that the trial court had the power to compel the city to issue warrants in discharge of the relator's judgment, but it should have been exercised so as not to demoralize or disarrange the municipal finances. The condition of the city finances as disclosed by the return was such, in my judgment, as would have justified the lower court in making an order to the effect that a portion of the judgment be paid with warrants during the present year, and the residue thereof during succeeding years. The federal courts have heretofore exercised such a discretionary power when they have been called upon to make orders compelling a levy of taxes for the payment of judgments against counties and other municipal corporations (Deuel Co. v. First Nat. Bank of Buchanan Co., 30 C. C. A. 30, 86 Fed. 264, 267), and, in my judgment, the facts disclosed by the return warranted its exercise in the present case.