## COUNTY COMMISSIONERS OF THE COUNTY OF CHEROKEE *v.* WILSON.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF KANSAS.

Submitted December 5th, 1883.—Decided December 17th, 1883.

*Appeals—Kansas—Mandamus—Municipal Corporations—Statutes.*

A recovered judgment June 11th, 1881, against a township in Cherokee County, Kansas, on bonds issued in payment of a subscription by the township to stock in a railway company. The township had no trustee then or since. An alternative writ of mandamus having been sued out to compel the board of county commissioners for the county to levy a tax sufficient to pay the judgment, and to compel the county clerk to extend the tax when levied, and to compel the county treasurer to collect it when extended, and to pay it to A when collected, judgment was entered for a peremptory writ in accordance therewith. On appeal by the county commissioners, *Held :*

1. That by the statutes of Kansas which were in force at that time, it was made the duty of the board of county commissioners of Cherokee county in consequence of the vacancy in the office of trustee of the township, to levy a tax sufficient to pay the judgment recovered by A.

2. That the alternative writ of mandamus was not issued prematurely.

3. That the clerk and treasurer having taken no appeal, the writ of error brought up for review only the objections of the board of commissioners.

*Mr. Wallace Pratt* and *Mr. Charles W. Blairs* for plaintiff in error.

*Mr. James S. Botsford, Mr. Marcus T. C. Williams* and *Mr. Joseph Shippen* for defendant in error.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

On the 11th of June, 1881, William C. Wilson, the defendant in error, recovered a judgment in the Circuit Court of the United States for the District of Kansas, against the township of Salamanca, Cherokee county, for $48,920.31. At that time the office of trustee of the township was vacant, and it has not been filled since. On the 24th of July, 1882, Wilson sued out of the same court an alternative writ of mandamus, returnable on the 9th of October, 1882, requiring the board of county commissioners of the county " to forthwith levy upon the tax-

able property . . . . in said township . . . a tax suffi-
cient in amount for the payment of the judgment . . . and
cause the same to be certified to the county clerk of said
county ; " and requiring the clerk of the county "to extend
said tax forthwith on the tax books of said county and deliver
the same with said tax so levied and extended thereon to the
county treasurer of said county," and the county treasurer
forthwith, after the tax books shall have been delivered to him
by the clerk, " to proceed to collect said taxes and pay the
same, when so collected, to said William C. Wilson in payment
of said judgment, interest, and costs," or show cause why they
had not so done.   This writ was served on the individual mem-
bers of the board of county commissioners, and on the clerk
and treasurer of the county, on the 26th of July.   On the 27th
of November, 1882, the respondents filed a motion to quash
the writ, and on this motion raised two questions, to wit :

1. Whether the writ was not sued out prematurely ; and,

2. Whether, under the statutes of Kansas, the county com-
missioners could legally do that which the writ sought to
coerce them into doing.

Before this motion was disposed of the individual members
of the board of county commissioners filed an answer, and
after the testimony was closed, Wilson moved for a peremptory
writ.   Upon the hearing of this motion and the motion to
quash, the judges holding the court were divided in opinion on
the following questions .

1st. Whether said motions respectively should be sustained
or overruled.

2d. Whether it is the legal duty of the board of county
commissioners of Cherokee, under the statutes of the State of
Kansas, to levy the tax as commanded by the alternative writ
of mandamus herein, for the payment of the judgment of the
relator against Salamanca township, in said county, based upon
interest coupons detached from bonds issued by said township
to pay shares of capital stock in a railroad company, which
bonds were voted under the act of the General Assembly of
the State of Kansas, entitled, " An Act to enable municipal
townships to subscribe for stock in any railroad and to pro-

vide payment of the same," approved February 25th, 1870, and issued September 1st, 1872, under the act of said general assembly entitled " An Act to authorize counties, incorporated cities, and municipal townships to issue bonds for the purpose of building bridges, aiding in the construction of railroads, waterpowers, or other works of internal improvement, and providing for the registration of such bonds, and the repeal of all laws in conflict therewith," approved March 2d, 1872.

The circuit judge was of opinion that the motion to quash should be overruled, and that for the peremptory writ granted. A judgment awarding the writ was thereupon entered, and the questions as to which the difference of opinion arose were duly certified. The case is now here on a writ of error for an answer to these questions.

The act of February 25th, 1870, authorized the township to subscribe to the capital stock of the Memphis, Carthage and Northwestern Railroad Company, and to issue bonds to pay the subscription. That was settled by the judgment against the township on account of which the mandamus is asked.

Every township in Kansas is a body corporate and politic (§ 1 [5965] Dassler's Comp. Laws, 977). The trustee is the principal officer of the township, and his duty is, among other things (§ 22 [5988] id. 980), to " superintend all the pecuniary concerns of his township," and at the July session of the board of county commissioners, annually, with the advice and consent of the board, to levy a tax on the property of the citizens of the township, for township, road, and other purposes, and report the same to the county clerk for entry on the tax roll, " but, in a failure of such trustee and commissioners to concur, then the board of county commissioners shall levy such township, road, and other taxes." The board of county commissioners are required by law to meet in regular session on the first Monday in July of each year. § 13 [1397] Dassler's Comp. Laws, 274. They must also meet on the first Monday in August in each year to estimate and determine the amount of money to be raised by tax for all county purposes, and all other taxes which they shall be required by law to levy. § 83 [5886] Dassler's Comp. Laws, 956. The county clerk must

make up the tax list immediately after the first Monday in August and deliver it to the treasurer for collection on or before the first Monday in November. § 84, id.

Sec. 6 of the act of February 25th, 1870, under which the bonds involved in this proceeding were issued, is as follows:

"SEC. 6. .Whenever any bonds shall be issued in pursuance of the foregoing provision, it shall be the duty of the board of county commissioners annually to proceed to levy and collect a tax on all the taxable property in such township sufficient to pay the interest on such bonds as the same becomes due, and to create a sinking fund sufficient to pay said bonds at maturity ; and such tax shall be collected in cash or the coupons of such bonds which may be due ; and such tax shall be collected as county and township taxes are collected and paid out by the treasurer on presentation of the coupons or bonds, when due ; and the county clerk, treasurer, and other officers who may be required to do any act under the foregoing provisions, shall be entitled to the same fees as are allowed by law for similar services, and liable to the same fines and penalties for non-compliance."

The act of March 2d, 1872, referred to in the second question certified, was repealed, so far as affects this case, by the act of March 9th, 1874 (Session Laws of 1874, p. 41), §§ 7 and 13 of which are as follows:

"SEC. 7. It shall be the duty of the proper officers of any county, city or township, in which bonds have been heretofore voted for any of the purposes mentioned in the act to which this act is amendatory, annually, at the time when other taxes are levied, to levy and cause to be collected a sufficient tax to pay the interest on all such bonds as the same shall become due, and also for the purpose of creating a sinking fund for the final redemption of such bonds. . . .

"SEC. 13. It will be the duty of the board of county commissioners of any county in which railroad bonds shall be issued under the provisions of this act, annually, at the time when other taxes are levied, to levy and cause to be collected, as other taxes are levied and collected, a sufficient tax to pay the interest on all bonds issued for railroad purposes by such county, or any town-

ship therein, as the same falls due, and also for the purpose of creating a sinking fund for the final redemption of such bonds."

These statutes were in force when the alternative writ of mandamus was sued out in this case. The judgment against the township was rendered on the 11th of June, 1881. It therefore became the duty of the proper officers to levy the tax at the time fixed by law for that purpose in the year 1881. No such levy was made, and, consequently, all officers whose duty it was to make the levy were in default when the alternative writ was sued out in 1882. It follows that the writ was not prematurely issued if it was the duty of the board of county commissioners to make the levy when there was no trustee of the township. The fact that the board may not have had actual notice of the rendition of the judgment until November, 1881, does not affect their legal obligation to make the levy. It may be accepted as an excuse for not performing that duty, but it does not relieve them from the consequences of their legal default.

The township trustee is in law the principal officer of the township. It is his duty to superintend all the pecuniary concerns of the township, and, with the advice and concurrence of the board of county commissioners, to levy all taxes required to meet the liabilities of the township not otherwise provided for by law; but if he fails in this duty, the board must, as we think, make the necessary levies for him. To that extent the board is charged with the duty of caring for the interests of the township. Such is the fair meaning of section 22 [5988]. Under that section the township trustee is required to attend the meeting of the board in July of each year, and lay before them his recommendations for taxes to be levied. As his levy can only be made with the concurrence of the board, there must necessarily be an inquiry by the board into the pecuniary concerns of the township, so as to determine whether what is recommended by the trustee is enough or more than enough to meet its liabilities for the current year. If the trustee has omitted a tax for any purpose, which the law requires to be levied, it is the clear duty of the board to make the levy themselves if the trustee will not. The trustee and the commis-

sioners are made in law a tribunal to meet in July in each year to estimate and determine what taxes are required in the township for the year. If both the trustee and the commissioners are present at the meeting, and agree as to what should be done, the trustee reports the tax to the county clerk, but if the trustee is not present, or being present does not agree with the commissioners, the opinion of the commissioners prevails, and they may proceed without him. This is the evident purpose of the provision that, " in failure of such trustee and commissioners to concur," the board shall make the levy. The tax to pay the judgment in this case was one of the taxes to be levied on the property of the township to pay a township debt. It is true that this section of the law was enacted in substance years before the bonds involved in this suit were issued, but unless it has been in some way superseded by reason of the special acts connected with the particular obligation of these bonds, it governs this case. So far as we are advised, if the tribunal consisting of the trustee and county commissioners is relieved from its general supervision of the needs of the township in the way of taxation for these bonds, it is only to put that duty on the board alone. If on the board, it was clearly their duty to levy the tax without the trustee at the meeting in August, 1881, because the legal liability of the township had then been judicially established. If, however, it was a matter in respect to which the trustee should act conjointly with them, both they and the trustee were in default in July, 1881. In any view of the case, the obligation to levy the tax had been imposed on the county commissioners when the alternative writ was sued out, and they have shown no good cause why the levy was not made.

The board of county commissioners have alone brought this writ of error. So far as appears, the clerk and treasurer are satisfied with what has been done in reference to them. The board are in no condition to complain for the other officers, because, under the law, they must levy the tax before the others can act, and, if the levy is made, the duties of the clerk and treasurer are purely ministerial. The whole proceeding depends on the duty of the board to levy the tax:

Opinion of the Court.

We conclude, therefore, that the motion to quash should have been overruled, and the motion for judgment sustained. The first question is answered accordingly. The second question is answered in the affirmative.

As the judgment was in accordance with these answers, it is

*Affirmed.*