DEUEL COUNTY, NEB., et al. v. FIRST NAT. BANK OF BUCHANAN COUNTY, MO.

(Circuit Court of Appeals, Eighth Circuit. April 4, 1898.)

No. 975.

1. MANDAMUS—TO COMPEL TAX TO PAY JUDGMENT.
    The federal courts may issue writs of mandamus to compel the levy of a tax to pay judgments which they have rendered against counties or other municipal corporations, when, by the laws of the state, it is expressly or impliedly made the duty of the officers of such municipalities to make provision for the payment of such judgments by an exercise of the power of taxation.

2. SAME.
    Where, by the laws of Nebraska, it is made the duty of county officials to levy a tax to pay all judgments against their respective counties, when such

judgments remain unpaid for want of sufficient funds a prima facie right to mandamus is made out by an information which alleges the recovery of a judgment against a county, and the failure of the county officials to pay it, or take any steps looking to its payment.

**3. SAME—APPORTIONMENT OF REVENUE.**

When, as under Code Neb. 1875, art. 9, § 5, the county authorities are prohibited from levying a tax in excess of a certain amount, for all purposes, and the estimate of expenses is sufficient to exhaust the revenue, where such expenses can be reduced by judicious management, and a portion of the revenues applied to the payment of judgment creditors, that course ought to be pursued, and the court may, by mandamus, require that it shall be pursued.

## In Error to the Circuit Court of the United States for the District of Nebraska.

This is a proceeding by mandamus, which was brought to compel the levy of a tax to pay a judgment in the sum of $5,102.40, with accrued interest and costs, which was recovered by the First National Bank of Buchanan County, St. Joseph, Mo., the defendant in error, against the county of Deuel et al., the plaintiffs in error, in the circuit court of the United States for the district of Nebraska, on July 1, 1896. The Consolidated Statutes of Nebraska of 1893, at pages 977, 978, contain the following provisions relative to the collection of judgments against counties which appear to be still in force:

"4112. That whenever any judgment shall be obtained in any court of competent jurisdiction in this territory for the payment of a sum of money against any county, * * * or against any municipal corporation, or when any such judgment has been recovered and now remains unpaid, it shall be the duty of the county commissioners, * * * city council, or other corporate officers, as the case may require, to make provisions for the prompt payment of the same.

"4113. If the amount of revenue derived from taxes levied and collected for ordinary purposes shall be insufficient to meet and pay the current expenses for the year in which the levy is made, and also to pay the judgment remaining unpaid, it shall be the duty of the proper officers of the corporation against which any such judgment shall have been obtained and remaining unsatisfied, to at once proceed and levy and collect a sufficient amount of money to pay off and discharge such judgments.

"4114. The tax shall be levied upon all the taxable property in the district, county, township, town, or city, bound by the judgment, and shall be collected in the same manner and at the same time provided by law for the collection of other taxes.

"4115. The corporate officers whose duty it is to levy and collect taxes for the payment of the current expenses of any such corporation against which a judgment may be so obtained, shall also be required to levy and collect the special tax herein provided for, for the payment of judgments.

"4116. If any such corporate authorities whose duty it is, under the provisions of this act, to so levy and collect the tax necessary to pay off any such judgment shall fail, refuse, or neglect to make provisions for the immediate payment of such judgment, after request made by the owner, or any person having an interest therein, * * * he or they having such interest may apply to the district court of the county in which the judgment is obtained, or to the judge thereof in vacation, for a writ of mandamus to compel the proper officers to proceed to collect the necessary amount of money to pay off such indebtedness, as provided in this act; and when a proper showing is made by the applicant for said writ, it shall be the duty of the court or judge, as the case may be, to grant and issue the writ to the delinquents, and the proceedings to be had in the premises shall conform to the rules and practice of said court, and the laws of this territory in such cases made and provided."

The respondents below, who are the plaintiffs in error here, filed a motion to quash the alternative writ of mandamus, which motion was overruled. Subsequently they filed an answer or return to the writ. A motion was made to strike out parts of the return, but the record does not disclose any action with reference to said motion. The cause was submitted to the circuit court upon the pleadings, "together with all the evidences," as the record recites, and the

trial judge made a special finding of the facts, upon which he awarded a per-
emptory writ, directing the levy of a tax for the year 1897 sufficient to pay
one-third of the relator's judgment. To vacate this order the respondents below
have sued out a writ of error.

W. T. Wilcox and John J. Halligan, for plaintiffs in error.

Alfred Hazlett and F. N. Prout, for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and PHILIPS,
District Judge.

THAYER, Circuit Judge, after stating the case as above, deliv-
ered the opinion of the court.

The questions open for review in this court upon the present rec-
ord are: First, whether the motion to quash the alternative writ
of mandamus was properly overruled; and, second, whether a per-
emptory writ of mandamus was properly awarded on the facts
found and reported by the trial judge.

The principal ground urged by the respondents below in sup-
port of their motion to quash the alternative writ of mandamus
is that, as the authority to issue a writ of mandamus against a
county must be found in the laws of the state, and as the laws of
the state of Nebraska quoted above only authorize an application
for a writ of mandamus against a county to be made to a particu-
lar court, to wit, the district court of the county, the circuit court
of the United States had no right to entertain the application for
a writ of mandamus, and in granting it acted wholly without ju-
risdiction. With reference to this contention it is only necessary
to say that it has long been settled that the federal courts may
issue writs of mandamus to compel the levy of a tax to pay judg-
ments which they have rendered against counties or other mu-
nicipal corporations, when, by the laws of the state, it is express-
ly or impliedly made the duty of the officers of such municipalities
to make provision for the payment of such judgments by an ex-
ercise of the power of taxation. This power has been exercised
repeatedly by the federal courts, and of its existence at the pres-
ent time there can be no reasonable doubt. If the courts of Ne-
braska can compel the officers of a county to levy a tax to pay a
judgment rendered against a county,—as they doubtless may do,
—then the circuit court of the United States for the district of
Nebraska can exercise a similar jurisdiction to compel the pay-
ment of a judgment by it rendered. Stryker v. Board, 40 U. S.
App. 585, 599, 23 C. C. A. 286, and 77 Fed. 567; Riggs v. Johnson
Co., 6 Wall. 166; Von Hoffman v. City of Quincy, 4 Wall. 535;
Butz v. City of Muscatine, 8 Wall. 575, 581; U. S. v. New Orleans,
98 U. S. 381, 393; Loan Ass'n v. Topeka, 20 Wall. 660; Wolff v.
New Orleans, 103 U. S. 358; U. S. v. Clark Co., 96 U. S. 216; Ralls
Co. Ct. v. U. S., 105 U. S. 733.

Another ground upon which the motion to quash appears to have
been based was as follows: That the information upon which the
alternative writ had been obtained was fatally defective, in that it
did not show the nature of the original cause of action on which
the judgment was founded, so that the court could decide whether,

under the laws of the state, the right existed to compel an exercise of the power of taxation for its payment. This position, however, must be regarded as untenable, for the reason that the federal courts take judicial notice of the general laws of the several states, and by the laws of Nebraska it is made the duty of county officials to levy a tax to pay all judgments which are recovered against their respective counties, when such judgments remain unpaid for want of sufficient funds wherewith to pay them. A prima facie right to a writ of mandamus was, therefore, made out by the information, which alleged the recovery of a judgment against Deuel county, and the failure of the county officials of that county to pay it, or to take any steps looking to its payment.

The constitution of Nebraska adopted in 1875 (article 9, § 5), which is still in force, provided, in substance, that county authorities should never assess taxes for county purposes the aggregate of which should exceed $1.50 per $100 valuation, except for the payment of indebtedness existing at the adoption of the constitution, unless otherwise authorized by a popular vote. This limitation, it seems, was applicable to the indebtedness represented by the relator's judgment. In view of that provision of the organic law, the trial court found, in substance, that on January 12, 1897, the board of county commissioners of the county of Deuel met, as required by law, for the purpose of making their annual estimate of the expenses of the county for that year; that the relator's attorney was present, and requested the board to include in their annual estimate of expenses the amount requisite to pay the relator's judgment, interest, and costs; that such request was denied, and that said board failed to include in said estimate any sum whatsoever for the payment of said judgment. It further found that the assessed valuation of county property for the year 1896 was $836,467, that the estimated assessed value of county property for the year 1897 would not exceed the valuation for the year 1896, and that the estimated county expenses as fixed by the board in January, 1897, amounted to $14,370. It further found that it would be burdensome on the taxpayers of said county if the board of commissioners was obliged to levy a tax sufficient to pay off the entire amount of the relator's judgment, interest, and costs, in addition to the necessary current expenses of the county for the year, but that it would not be burdensome to levy a tax sufficient to pay one-third of said judgment, interest, and costs. It accordingly concluded as a matter of law that it was the duty of the board of county commissioners to have included in their estimate of the expenses of said county for the year 1897 the amount of the relator's judgment, and it therefore ordered a levy of taxes for the year 1897 adequate to pay one-third of said judgment and the accrued costs, amounting in the aggregate to the sum of $1,872.49. Such action on the part of the trial court necessarily required the board of county commissioners to appropriate to the payment of the relator's judgment a portion of the county revenue for the year 1897, which the board had intended to apply exclusively to the discharge of the

estimated county expenses, inasmuch as a levy of $1\frac{1}{2}$ per cent. on the assessed valuation of county property would not produce a fund adequate to pay one-third of the relator's judgment and the other estimated expenses. It is strenuously urged that this was an unauthorized interference with a discretionary power vested in the board of county commissioners. The supreme court of Nebraska, however, in State v. Weir, 33 Neb. 35, 39, 49 N. W. 785, has decided, in effect, that a board of county commissioners in that state may be compelled by mandamus to appropriate a part of the county revenue to the payment of a judgment against the county, notwithstanding the fact that the other estimated expenses are enough to absorb the entire revenue, provided the amount devoted to such object is not so large as to leave the county board practically without means to meet the necessary current expenses of the county government. The court in that case remarked, in substance, that, if such control could not be exercised over the action of the board, then it would be entirely feasible for the board to exhaust all the revenues of the county in the payment of current expenses, without making any provision for the payment of the just indebtedness of the county already incurred, and that by this means judgment creditors might be deprived of all means of enforcing the payment of their claims. We do not understand that the doctrine enunciated in the case last cited has been overruled or disturbed by the recent decision in the case of State v. Sheldon (Neb.) 73 N. W. 694. It seems to us to be an entirely just and reasonable view that boards of county commissioners, under the laws of Nebraska, are not vested with such an absolute control over the disposition of the county revenues as will enable them to defeat the claims of judgment creditors by swelling the estimate for county expenses to such a sum as will exhaust the entire county revenue for a given year, or a series of years. If a judgment is recovered against a county, its board of commissioners ought to make a fair effort to pay it,—if need be, by cutting down to some extent the outlay for current expenses. Such expenses, by judicious management, are usually capable of being reduced to some extent without serious injury to the public service; and when they can be so reduced, and a portion of the current revenue applied to the payment of judgment creditors, that course ought to be pursued, and the courts may properly require that it shall be pursued. In view of the special finding of facts contained in the present record, we understand that the trial court was satisfied by the evidence that the public would suffer no harm, and that the board of county commissioners of the defendant county would not be seriously embarrassed in maintaining the county government, if enough of the current revenue for the year 1897 to pay one-third of the relator's judgment was applied to that purpose. We must accept that finding by the trial court as conclusive, and it results therefrom that the judgment awarding a peremptory writ should be affirmed. It is so ordered.