UNITED STATES ex rel. MASSLICH v. SAUNDERS, City Treasurer, et al.

(Circuit Court of Appeals, Eighth Circuit.   July 7, 1903.)

No. 1,835.

1. MANDAMUS AGAINST MUNICIPALITIES—EXECUTION.
　　The writ of mandamus to enforce the collection of judgments of the national courts against municipalities is the legal substitute for a writ of execution to enforce judgments against private parties, and the rights of their judgment creditors to their respective writs are equally inviolable.

2. OFFICERS—DUTY TO EXERCISE POWERS GRANTED.
　　The law imposes upon public officers the duty to do for the benefit of private citizens whatever it invests them with the power to perform on their behalf, whenever public interest or individual rights call for the performance of that duty.

3. MANDAMUS—LEVY OF TAX—PREVIOUS DEMAND UNNECESSARY.
　　No demand upon the officers of a municipality to levy a tax is necessary before instituting proceedings for mandamus, where the statute imposes upon them the duty to levy it, or where that duty, under the law, is plain, or where it is manifest that such a demand would be an idle ceremony.

4. SAME—TAX—DEMAND OF PAYMENT SUFFICIENT DEMAND TO MAKE LEVY.
　　A demand upon the officers of a municipality of payment of a judgment or claim against it is a sufficient demand upon them to levy a tax to pay it, where the statute or the general law authorizes them to make provision for its payment by such a levy.

5. MUNICIPAL CORPORATIONS—POWER TO LEVY TAX TO PAY BONDS.
　　The power of the officers of a municipality to levy sufficient general taxes to pay the bonds of their city is a legal inference from the authority to issue the bonds, in the absence of any constitutional or statutory limitation or inhibition of this power.

6. MANDAMUS—JUDGMENT AGAINST MUNICIPALITY ON BONDS.
　　Statutes conferring powers and imposing duties upon municipal officers to levy taxes to pay judgments against their cities supersede statutes and their limitations conferring less extensive powers and duties upon such officers to levy taxes to pay bonds when the bonds have become merged in final judgments.   Thenceforth the statutes authorizing taxes to pay judgments become the measure of the authority of the officers.

7. MUNICIPAL BONDS—LOCAL IMPROVEMENTS IN NEBRASKA—GENERAL LIABILITY OF CITIES.
　　District bonds of a city, issued to pay for internal improvements under subdivision 58, § 52, art. 2, c. 14, Comp. St. Neb. 1887 (section 1282c, subd. 55, Comp. St. 1901), which contain no stipulation limiting the recourse of their holders to the special taxes levied for such improvements, create a general liability of the city issuing them; and their officers are authorized and required to levy and collect taxes upon all the taxable property within the limits of the city, under subdivisions 1, 2, and 19 of section 1282c, Comp. St. Neb. 1901, to pay the bonded indebtedness which they evidence.

8. SAME—JUDGMENTS—OFFICERS MUST LEVY GENERAL TAXES TO PAY.
　　When a judgment has been rendered against a city on such bonds, the power is granted to its officers, and the duty is imposed upon them, by sections 4488–4491, Comp. St. Neb. 1901, to levy and collect taxes upon all the taxable property in the city to pay it.

---

¶ 1. Enforcement of judgment against municipality by mandamus, see note to Holt County v. National Life Ins. Co., 25 C. C. A. 475.

¶ 3. See Mandamus, vol. 33, Cent. Dig. § 44.

**9. PLEADING—DECLARATION—FACTS LIMITING LIABILITY.**
  Facts which limit a general liability imposed by statute or by law
  constitute matter of defense. It is not incumbent on a plaintiff to nega-
  tive their existence either by pleading or by proof.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District
of Nebraska.

Chester B. Masslich, in pro. per.

Melvin B. Davis, for defendants in error.

C. C. Flansburg and R. O. Williams, amici curiæ.

Before SANBORN, THAYER, and VAN DEVANTER, Circuit
Judges.

SANBORN, Circuit Judge. This writ of error was sued out to
reverse a judgment of the court below which denied the prayer of the
relator, Chester B. Masslich, for a mandamus commanding the mayor
and council of the city of Beatrice to levy a tax upon the property in
that city to pay that portion of a judgment which he had obtained
against it, to the payment of which there were no funds in the city
treasury applicable. The case is before us upon a petition, an answer,
and a special finding of facts. No ruling upon the admission or rejec-
tion of evidence is challenged, and the only question for consideration
is whether or not the judgment of the court is sustained by the facts
found by the circuit court. That court refused to issue the mandamus
for a levy of the tax upon the ground that no demand for such a levy
had been made upon the mayor and council of the city before the
petition for the writ of mandamus was filed, and this is the ruling of
which complaint is here made. The facts which condition the answer
to the question thus presented, as they are disclosed by the admissions
of the pleadings and the finding of facts, are these: On September
8, 1899, the relator recovered a judgment in the court below against
the city of Beatrice for $9,415.29. On April 22, 1901, his judgment
was affirmed by this court. The city has no property subject to execu-
tion, and the relator has no adequate remedy in the ordinary course
of the law to enforce the collection of his judgment. On June 10,
1901, a motion for a rehearing was denied by this court, and on July
6, 1901, its mandate which recited the affirmance of the judgment
was filed in the Circuit Court. This judgment was based upon seven
classes of bonds. There was sufficient money in the treasury of
the city applicable to the payment of the bonds of the relator belong-
ing to two of these classes to pay them in full, and there was sufficient
money in the treasury applicable to the payment of the bonds which
belonged to four of the other classes to pay them in part. In this
state of the case, the relator, as the court below finds—

"Made due and formal demand for the payment of said judgment upon the
said Saunders, as treasurer of the city of Beatrice, and upon the said mayor
and council, and such demand was refused; that the demand upon the
treasurer was made on June 19, 1901, and the demand upon the mayor and
council on June 26, 1901, at a regular meeting thereof; that afterwards, and
at the same session, said mayor and council adopted estimate for the ex-
penses of the annual appropriation bill and the annual tax ordinance of said
city, and on July 23, 1901, adopted the annual appropriation ordinance of

said city, but that no provision for the appropriation of any money or the levy of any tax for the payment of the said judgment, or any part thereof, was at any time made by said mayor and council."

Upon consideration of these facts the Circuit Court issued a peremptory writ of mandamus to the city treasurer, the mayor, and the council of the city, commanding them to pay over to the relator the money in the treasury applicable to the payment of the bonds upon which his judgment was based, but refused to direct them to levy a tax to pay that portion of the judgment which would remain unpaid after this application of the money, because, in its opinion, the relator had not made a proper demand for the levy of such a tax.

In the enforcement of judgments of the national courts against municipal and quasi municipal corporations, the writ of mandamus is the legal substitute for the writ of execution to enforce judgments against private parties. The plaintiff in a judgment of the former class has the same right to the issue and enforcement of a mandamus commanding the proper officers of the defendant corporation to make suitable provision for its payment that the plaintiff in a judgment of the latter class has to the issue and enforcement of a writ of execution. In re Nevitt, 117 Fed. 449, 454, 54 C. C. A. 622, 628; Lafayette Co. v. Wonderly, 92 Fed. 313, 316, 34 C. C. A. 360, 363; Dempsey v. Oswego Tp., 51 Fed. 97, 99, 2 C. C. A. 110, 112.

Of course, neither a mandamus nor an execution may require the officer or officers to whom it is addressed to do any act which he or they have not lawful authority to do. But the legal duty is always imposed upon them to exercise all the authority with which they are invested to collect the judgments upon which such writs are issued, and the courts may and should command and enforce the performance of this duty. Whatever public officers are empowered to do for the benefit of private citizens the law makes it their duty to perform whenever public interest or individual rights call for the performance of that duty. Supervisors v. United States, 4 Wall. 435, 446, 18 L. Ed. 419; City of Little Rock v. United States, 103 Fed. 418, 424, 43 C. C. A. 261, 267.

The statutes of Nebraska provided that, whenever any judgment was obtained against a city of that state, it should be the duty of its council or other corporate officers, as the case might require, to make provision for its prompt payment (Comp. St. 1901, § 4488); that, if the ordinary revenue was insufficient to pay the current expenses of the municipality and any unpaid judgment, it should be the duty of such officers "to at once proceed and levy and collect a sufficient amount of money to pay off and discharge such judgments" (section 4489); that the tax should be levied on all the taxable property in the city bound by the judgment, and should be collected as other taxes were collected (section 4490); that such officers should also be required to levy a special tax for the payment of judgments (section 4491); that if such officers should "fail, refuse or neglect to make provisions for the immediate payment of such judgments after request made by the owner," he might have a writ of mandamus "to compel the proper officers to proceed to collect the necessary amount of money to pay off such indebtedness" (section 4492). These pro-

visions of the statutes imposed upon the respondents, the officers of this city, the duty to provide the ways and means to pay this judgment. When the relator demanded its payment they were informed of their duty. The only purpose of a demand is to give the party upon whom it is made a reasonable opportunity to comply with it, and thus to avoid the expense of proceedings to enforce it. The demand of payment of the judgment did not fail to accomplish this purpose. It was made on June 26, 1901, more than 20 days before the city council passed the annual tax ordinance for that year. It is true that it was not a demand that the officers of this city should levy a tax, but that it consisted only of a formal requirement that they should pay the judgment. But it was neither the privilege nor the duty of the relator to determine or direct in what way these officers should pay his judgment, or by what means they should secure the funds to pay it. They had moneys in the city treasury applicable to its payment, and it was their duty, and not that of the relator, to determine what moneys of the city could be lawfully applied to this judgment, and what amount must be raised by taxation. The statute gave them the power and imposed upon them the duty to determine by what means they would pay the claim of the relator, as completely as it imposed upon them the duty to pay it. It required them to "make provision for its prompt payment," and a fortiori to determine what that provision should be. The demand of payment of this judgment was sufficient to sustain this proceeding for a mandamus to compel a levy of a tax to raise the money to discharge it, and no formal demand to make such a levy was required before the proceeding was instituted, (1) because where the statute imposes the duty to make provision for payment of a judgment against a city upon its officers, and authorizes the issue of a writ of mandamus to compel them to levy a tax in case of their failure to make such provision, a demand of payment is equivalent to a demand of a levy, if such a levy is necessary (City of Cairo v. Everett, 107 Ill. 75, 78); (2) because no demand of a levy of a tax is requisite where the duty to levy it is imposed by the statute (Cherokee County Commissioners v. Wilson, 109 U. S. 621, 625, 3 Sup. Ct. 352, 27 L. Ed. 1053; Deuel Co. v. First Nat. Bank, 86 Fed. 264, 267, 30 C. C. A. 30, 33; County Commissioners v. King, 13 Fla. 451, 461), or where the duty is plain (High's Extraordinary Legal Remedies, § 377b; State v. City Council of Racine, 22 Wis. 258, 260; Fisher v. City of Charleston, 17 W. Va. 595); and (3) because no demand is necessary where it is manifest that it would be an idle ceremony (U. S. v. Auditors of Town of Brooklyn [C. C.] 8 Fed. 473). The fact that the officers of this city refused, after demand of payment, to use any of the money in the city treasury applicable to the payment of this judgment for that purpose, is a demonstration of the fact that a demand upon them to levy a tax to pay it would have been of no avail. The prayer of the relator for a writ of mandamus to compel the levy of a tax to pay his judgment should not have been denied for lack of a prior demand upon the officers of the city to make it.

There is another branch of this case which has been earnestly called to our attention, and which perhaps deserves consideration.

Counsel for the city contends that, although no demand to make a levy was requisite, the judgment below was right, and that it should not be reversed because the court gave a wrong reason for a right judgment. The prayer of the petition was that the officers of the city be commanded to make a levy upon all the taxable property within it to pay that portion of the judgment which will remain unpaid after the application of the money in the treasury which the court has directed to be paid to the relator. The portion of the judgment which will then remain unsatisfied is founded on "district paving bonds" and "district curbing and guttering bonds" of the city of Beatrice, which its counsel claims were issued under the provisions of subdivision 58 of section 52 of article 2 of chapter 14 of the Compiled Statutes of Nebraska of 1887. Without stopping to consider or decide whether or not the record sustains this claim, or whether or not this claim is in accordance with the fact, the concession will be made, for the purpose of this opinion and decision, that these bonds were issued in this way. Planting himself upon this foundation, counsel for the city maintains (1) that the officers of the city have no power to levy a general tax upon all the taxable property in the city to pay a judgment based upon these bonds, but that their authority is limited to the levy of special taxes upon the property in the respective paving districts to pay the specific bonds issued on account of those districts, respectively; and (2) that the record fails to show that the demanded levy would fall within the limit prescribed by the law. Let us consider these propositions in their order.

It is conceded that the writ of mandamus issues only to compel the discharge of a duty which the officers to whom it is directed are empowered by statute or by law to perform, and that the mere rendition of a judgment against a municipality, in the absence of statutory or legal provisions to the contrary, does not vest the officers of a municipality with power to levy a general tax to pay it. City of Little Rock v. U. S., 103 Fed. 418, 420, 43 C. C. A. 261, 263; U. S. v. Macon Co., 99 U. S. 582, 589, 25 L. Ed. 331; Supervisors v. U. S., 18 Wall. 71, 77, 21 L. Ed. 771; U. S. v. Clark Co., 95 U. S. 769, 24 L. Ed. 545.

But the power of the officers of a municipality to levy sufficient taxes to pay its bonds is a legal inference from the authority of the city to issue the bonds, in the absence of any limitation or inhibtion of this authority in the act which grants the power, in the general law, or in the Constitution. Loan Ass'n v. Topeka, 20 Wall. 655, 660, 22 L. Ed. 455; U. S. v. New Orleans, 98 U. S. 381, 393, 25 L. Ed. 225; Ralls County Court v. U. S., 105 U. S. 733, 735, 736, 26 L. Ed. 1220; U. S. v. Clark Co., 96 U. S. 211, 24 L. Ed. 628; Commonwealth v. Commissioners of Allegheny Co., 37 Pa. 277, 290; Lowell v. Boston, 111 Mass. 454, 460, 15 Am. Rep. 39; Hasbrouck v. Milwaukee, 25 Wis. 122.

The city of Beatrice had the power, under the Constitution and statutes of that state, to issue the district bonds upon which that portion of the judgment now under consideration is founded. The judgment against the city upon them has put that question at rest. The legal presumption therefore arises that the officers of the city

have the power to levy a general tax to pay the bonds which they were authorized to issue. Where is the inhibition or limitation upon this power? Counsel for the city endeavors to spell it out of the act of 1887 under which the bonds were issued. But the bonds have now become merged in a judgment, and there is nothing in the act of 1887 which in any way repeals, restricts, or limits the provisions of the statutes of Nebraska which have already been recited, and which both empower and command the officers of cities in that state to levy general taxes to pay all judgments against them whenever it shall be necessary to make such levies to effect the payments. Those provisions of the statutes of Nebraska were enacted in 1867. They were in force when the act of 1887 was enacted, and they are still in effect. Now, if it be conceded that prior to the rendition of the judgment upon the bonds there was either no authority or some limitation of the authority of the officers of this city to levy a general tax to pay them, yet that power was vested in the respondents and that duty was imposed upon them by the act of 1867 (sections 4488, 4489, 4490, 4491, 4492, Comp. St. Neb. 1901) the moment this judgment against the city became final. The instant that judgment was rendered, the debt it evidenced fell under the operation of the act of 1867. The act of 1887 became functus officio in regard to the levy and collection of the tax to pay the debt, and the powers and duties of the officers of the city respecting this matter were thenceforth measured by the act respecting judgments, and no longer by the statute regarding the issue of the bonds. General statutes which authorize and require officers of municipalities to levy and collect general taxes to pay judgments against them condition the power and duty of such officers in that regard from the time the judgments are rendered, where the Legislature has not provided otherwise, either in express terms or by fair implication. From that time they supersede the effect and the limitations of subsequent statutes granting less extensive powers under which the bonds or other evidences of debt merged in the judgments were issued. Butz v. City of Muscatine, 8 Wall. 575, 580, 19 L. Ed. 490.

But this is not all. There is no limitation in the act of 1887 upon the power of the officers of cities to levy general taxes to pay district bonds. It is undoubtedly competent and practicable for a city to agree with the holders of the bonds it issues for internal improvements that it will not be liable for their payment, and that the only recourse of their owners shall be to the moneys raised by special assessments upon the property benefited. The reason why such agreements are not found either in the statutes or the bonds which are used for the purpose of raising money to make these improvements is not far to seek. Cities issue such bonds to raise money, and bonds which contain such stipulations, or which are issued under statutes which contain such agreements, are not as available for the purpose of raising money as the plain promises of the cities to pay. Investors are not so ready to purchase the former as the latter. There was no such stipulation or limitation in the bonds here in issue, nor in the act under which they were sent forth. That act provides, in subdivision 58 of section 52 of article 2, that the mayor and council of the city

124 F.—9

may create paving districts, may pave, curb, and gutter the streets in such districts, and may assess the cost of such improvements upon the lots abutting thereon. It requires the total cost of any such improvement to be levied at one time, and provides that one-tenth of the special taxes thus assessed shall become delinquent in each year until they are all paid. It empowers the mayor and council to issue district bonds bearing interest at 7 per cent. per annum, and payable in not exceeding 10 years from their date, for the purpose of paying the cost of the improvement, and requires these officers to provide in such a case that the special taxes and assessments shall constitute a sinking fund for the payment of the bonds and interest. It allows any owner of property assessed for the improvement to pay his share of its cost within 50 days from the levy of the special tax, and provides that thereupon his property shall be exempt from any lien or charge therefor. There is no other provision respecting the payment of the bonds by means of the special taxes, and a critical examination of the terms of this act which have now been recited leads all but inevitably to the conclusion that it was neither the purpose nor the intent of the Legislature of Nebraska in enacting this law, nor was it the legal effect of the act, to limit the liability of the city or the recourse of the bondholders to the special taxes levied for the improvement. The purpose and effect of this legislation go no farther than to enable the city, as between its general taxpayers and those especially benefited by such a local improvement, to reimburse itself in part for the cost of making the improvement by levying and collecting the special taxes upon the property benefited thereby.

If the intent of the legislators had been to limit the remedy of the bondholders to the special taxes, they would surely have provided some way by which the amount of the bonds and the interest upon them could be collected from the specific taxes authorized to be levied. There is no such provision, and the terms of the act are such that the amounts that may be lawfully collected by the special taxes can never be made to correspond with the amount of the principal and interest of the bonds issued for the cost of the improvement. These bonds may be made payable at any time within 10 years from their date, and they may draw interest at 7 per cent. per annum. Suppose they are made payable 9 years after their date. The entire cost of the improvement must be levied upon the abutting property at one time, but collection of only one-tenth of it may be enforced in any single year, and the deferred payments draw but 7 per cent. interest per annum. If all the owners of the property pay their taxes just before they become delinquent, there will be a deficiency of interest, because the entire cost of the improvement draws interest from the city, in the form of the bonds, while the city receives interest only on the deferred payments of the taxes. Again, the statute provides that any property holder may pay his share of the cost of the improvement within 50 days from the levy of the tax. Suppose that all the owners of property elect to pay within the 50 days. Their property is then "exempt from any lien or charge therefor," the statute declares. But the city has received an amount equal

to the principal of the bonds only, and the interest upon them for 9 years, which is equal to 63 per cent. of their principal, is not, and cannot be, provided for by the special taxes. If the time of payment of the bonds is changed from 9 years to 7 years or 6 years, or to any other time, the result is similar. In no case will the amount of the bonds and their interest be the same as the amount required to be collected as special taxes.

Moreover, a city is not required to issue these districts bonds when an internal improvement is made, under the act of 1887. It may pay the cost of the improvement, and subsequently obtain reimbursement from the special taxes, or it may issue the district bonds, use the money to pay for the improvement, and then put the amounts collected from the special taxes in the sinking fund to meet the bonds. If it adopts the former course, it charges itself and all the taxable property within it with a liability to pay the cost of the improvement the moment it makes the contract for it. It pays that cost, and trusts to the collection of the special taxes during the succeeding 9 years for reimbursement. If it pursues the latter course, it charges itself and all the taxable property within it, in the same way, with liability to pay the cost of the improvement when it makes the contract. It issues the district bonds, charges itself and all the taxable property within it with liability to discharge its express promise to pay them, pays the cost of the improvement with the proceeds of their sale, and then seeks to recover a portion of the money to pay the bonds from the collection of the special taxes. In either case the faith and credit of the city are necessarily pledged in the first instance to pay the cost of the improvement, and in the latter case to pay the bonds issued to discharge the primary liability. In neither case can the remedy of the creditors, whether they are contractors to make the improvements or the holders of the district bonds, be limited to the special taxes upon the abutting property, in the absence of an express stipulation to that effect in the contracts or in the bonds, or in the law under which the contracts and bonds are made. U. S. v. Ft. Scott, 99 U. S. 152, 159, 161, 25 L. Ed. 348; Hitchcock v. Galveston, 96 U. S. 341, 24 L. Ed. 659.

Not only this, but there are other and general provisions of the statutes of Nebraska which grant to the officers of this city plenary power to levy taxes upon all the taxable property within its limits to pay these bonds. Those statutes empower these officers "to levy taxes for general revenue purposes not to exceed fifteen mills on the dollar in any one year on all property within the limits of said city taxable according to the laws of the state of Nebraska" (Comp. St. 1887, c. 14, art. 2, § 52, subd. 1); "to levy any other tax or special assessment authorized by law" (subdivision 2); "to make provision for a sinking fund to pay accruing interest, and to pay at maturity the principal of the bonded indebtedness of the city, and to levy and collect the taxes on all the taxable property in the city, in addition to other taxes, for the purpose of paying the same, and to provide that the said tax shall be paid in cash; and whenever any city has heretofore issued bonds by virtue of any special authority derived from the Legislature of the territory or the state, the council shall have power to levy and

collect taxes for the purpose of paying such bonds as is provided in
laws giving such authority" (subdivision 54). Comp. St. 1901, §
1282c, subds. 1, 2, 19. Conceding, but not deciding, that the city
council of this city has the power, if it has not already exercised it,
under the last clause of subdivision 54, supra, to levy and collect spe-
cial taxes to pay these bonds, it is perfectly clear that the first part
of this article confers upon it full authority to levy and collect taxes
on all the taxable property within the city for the purpose of paying
its bonded indebtedness, and these bonds evidence a part of that in-
debtedness. Here is the sum of the whole matter.

District bonds of a city issued under subdivision 58, § 52, art. 2, c.
14, Comp. St. Neb. 1887, section 1282c (subd. 55, Comp. St. 1901),
which contain no stipulation limiting the recourse of their holders to
special taxes, create a general liability of the city which issues them,
and its officers are empowered and required to levy and collect taxes
upon all the taxable property within it, under subdivisions 1, 2, and 19
of section 1282c, Comp. St. Neb. 1901, for the purpose of paying the
bonded indebtedness they evidence.

When a judgment has been rendered against a city upon such
bonds, the power is granted to its officers, and the duty is imposed
upon them, to levy and collect general taxes to pay that judgment,
by sections 4488, 4489, 4490, 4491, and 4492, Comp. St. Neb. 1901.
The bonds here in controversy were lawfully issued by the city of
Beatrice under subdivision 58, § 52, art. 2, c. 14, Comp. St. Neb.
1887. They contain no limitation of the liability of the city. Judg-
ment against the city has been rendered upon them, and the re-
spondents, the officers of this city, are vested with the power and
charged with the duty to levy and collect sufficient taxes upon all the
taxable property within the limits of the city to pay this judgment.

The other objection of counsel for the respondent to the issue of
the mandamus is unworthy of serious consideration. It is that the
relator did not plead and prove that the tax which he asked the
officers of the city to levy was not without some constitutional or
statutory limitation which he neither pleaded nor specified. The judg-
ment against the city and the demand for its payment imposed upon
its officers the duty of making a levy of a general tax to pay it. The
judgment and the demand established a perfect cause of action for a
writ of mandamus against the respondents under the statutes which
required them to make provision for the payment of the judgment.
Deuel Co. v. First Nat. Bank, 86 Fed. 264, 267, 30 C. C. A. 30, 33.
If there is any limitation upon the powers granted to them by the
statutes which have been recited, it arises upon special facts which
have not been pleaded or proved, such as the assessed valuation of the
property of the city, and the amount of the necessary levy for current
expenses. The limitation has no application to the facts admitted
and found in the record before us. In this state of the case the facts
regarding the assessed valuation of the property and the necessary
levy for the current expenses of the city constitute matter of defense,
and the silence of the record concerning them is fatal to the re-
spondents. Facts which limit a general liability imposed by statute

are matters of defense, and it is not incumbent upon the complainant to negative their existence either by pleading or by proof.

That portion of the judgment of the Circuit Court which dismissed so much of the petition of the relator as prayed for the levy of a tax is reversed, with costs, and this case is remanded to the court below with instructions to enter judgment for the relator, and to issue a peremptory writ of mandamus commanding the levy and collection of a tax on all the taxable property in the city of Beatrice substantially as directed in the alternative writ.